**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| STEVEN IVANKOVICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:23-cv-24894-FAM |
| | ) | |
| JEANETTE IVANKOVICH and | ) | |
| SCHILLER DUCANTO & FLECK LLP, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendants, JEANETTE IVANKOVICH ("Jeanette") and SCHILLER DuCANTO & FLECK LLP ("SDF") (collectively, "Defendants"), by and through their undersigned counsel, hereby move pursuant to Fed. R. Civ. P. 12(b)(1) and (6) for entry of an order dismissing the Complaint of Plaintiff, STEVEN IVANKOVICH ("Steven"), with prejudice for failure to state a claim upon which relief can be granted. In support thereof, Defendants state as follows:

**INTRODUCTION**

In October 2021, Jeanette filed a petition for dissolution of marriage against Steven in the Circuit Court of Cook County, Illinois. In that proceeding, the divorce court entered an order requiring Steven to pay $400,000 to Jeanette's divorce attorneys, SDF, and an additional $25,000 to retain a forensic account. Steven ignored that order, resulting in a body attachment order in September 2023.

In November 2023, Steven filed the instant two-count Complaint against Jeanette and SDF. In Count I, Steven requests a declaratory judgment relating to the marital property status of his membership interests in various limited liability companies. In Count II, Steven seeks an

injunction enjoining Florida law enforcement from enforcing the body attachment order on the ground that the order violates the Florida constitution.

This Court should dismiss Steven's Complaint for two reasons. With respect to Count I, the Court should decline to exercise jurisdiction over Steven's claim because it involves a domestic relations issue that is already pending in and will be resolved by the Illinois divorce court. Under the *Colorado River* and domestic relations exceptions to jurisdiction, this Court should dismiss Count I of the Complaint.

With respect to Count II, dismissal is appropriate on the simple ground that Steven's injunction request violates the Full Faith and Credit Clause of the U.S. Constitution. The Complaint makes no assertion that the Illinois divorce court's body attachment order was entered without jurisdiction. Instead, the Complaint alleges that the body attachment order would violate the Florida constitution if enforced in Florida, where Steven now resides. The law is clear, however, that a state must enforce another state court's judgment so long as it was entered by a court with proper jurisdiction. Failure to do so would violate the Full Faith and Credit Clause of the U.S. Constitution. Thus, Count II fails to state a claim as a matter of law.

## BACKGROUND FACTS/ALLEGATIONS OF THE COMPLAINT

Steven and Jeanette are Respondent and Petitioner, respectively, in a divorce proceeding that has been pending in the Circuit Court of Cook County, Illinois since October 2021. [ECF No. 1-1, ¶ 10]; *see also* Divorce Petition, attached hereto as **Exhibit A**.[1] In the divorce case, the circuit court entered an order on May 18, 2023 requiring Steven to pay Jeanette $400,000 for Jeanette's

---

[1] "It recognized that a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (internal quotations omitted).

legal fees and $25,000 for Jeanette to be able to retain a forensic accountant.  [*Id.* at ¶ 12].  After Steven failed to comply with that order, the circuit court found Steven in indirect civil contempt and issued a body attachment order for his arrest.  [*Id.*].

Steven alleges that prior to the body attachment order, he was the subject of a charging order entered in a separate proceeding brought by one of his creditors in Miami, Florida. Specifically, Steven alleges that on July 29, 2022, a charging order was entered by the circuit court for Miami-Dade County, Florida against his interests in various limited liability companies as a result of a judgment entered against him and in favor of a creditor named Pami Grand Too LLC. [*Id.* at ¶ 12].  The charging order requires the limited liability companies "to pay the Judgment Creditor all distributions to which the Judgment Debtor would have otherwise been entitled by virtue of his limited liability company interests until all amounts due under the Judgment against the Judgment Debtor and in favor of the Judgment Creditor have been satisfied."  [ECF No. 1-1, p. 27, ¶ 5].

On November 13, 2023, Steven filed suit in the circuit court of Miami-Dade County, Florida against Jeanette and her divorce attorneys, SDF.  Defendants properly removed the matter to this Court on December 26, 2023.

Steven's Complaint contains two counts.  Count I seeks a declaratory judgment on numerous issues that boil down to two questions: (1) whether Jeanette has a marital interest in Steven's membership interests in the companies that are subject of the charging order; and (2) if Jeanette does have a marital interest, whether Jeanette or Pami Grand Too LLC has priority to distributions that the companies pay to Steven. [ECF No. 1-1, p. 14].  Count II requests a preliminary and permanent injunction enjoining the enforcement of the body attachment order in Florida on the ground that the order violates the Florida constitution.  [ECF No. 1-1, ¶¶ 51-52].

## ARGUMENT

**I.     UNDER RULE 12(b)(1), COUNT I OF THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO THE *COLORADO RIVER* DOCTRINE OF ABSTENTION**

Pursuant to the U.S. Supreme Court's decision *in Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), a federal court may dismiss a lawsuit pursuant to Rule 12(b)(1) by declining to exercise jurisdiction "when federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). Here, the parties in this action are virtually identical to the parties in the underlying divorce proceeding, with the inclusion of SDF as a defendant in this suit being the only difference. "Parallel proceedings do not have to involve identical parties, issues and requests for relief." *O'Dell v. Doychak*, 2006 U.S. Dist. LEXIS 76476, at \*17 (M.D. Fla. Oct. 19, 2006). Thus, "[t]wo cases can involve substantially similar parties even if some defendants present in the federal case are not parties to the state action." *Id*.

That is precisely the situation here where SDF, though not a named party in the divorce proceeding, is intimately involved in the divorce case as Jeanette's counsel and, in fact, is the beneficiary of the order at issue in Count I of the Complaint, *i.e.*, the divorce court's order requiring Steven to pay SDF's legal fees. Thus, while SDF is not a party to the divorce case, it is a "quasi" party by way of the fee order. Furthermore, the threshold issue central to Steven's declaratory judgment claim is whether Jeanette has a marital interest in the limited liability companies that are subject of the Florida state court's charging order. As more fully explained below, this question will be answered in the divorce proceeding. These two matters therefore represent parallel proceedings for purposes of *Colorado River*.

Once parallel proceedings are established, a district court must weigh the following six

factors in determining whether abstention is appropriate: "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights." *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d at 1331.  Moreover, a district court may consider "the vexatious or reactive nature of either the federal or the state litigation" and also "whether the concurrent cases involve a federal statute that evinces a policy favoring abstention." *Id*.

All of the *Colorado River* factors favor dismissal of Count I of the Complaint.  First and foremost, the Illinois divorce court is the proper venue for determining whether Jeanette has a marital interest in Steven's membership interests in the LLCs.  "Under Illinois law, a divorce court is responsible for determining what property is or is not 'marital property' and, once that categorization is made, 'shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors.'"  *Reinbold v. Thorpe (In re Thorpe)*, 546 B.R. 172, 177 (Bankr. C.D. Ill. 2016) (quoting 750 ILCS 5/503(d); *see also Martin v. Mid-Kansas Wound Specialists, P.A.*, 532 P.3d 814, 825 (Kan. Ct. App. 2023) ("There is no question the divorce court has the exclusive jurisdiction to resolve competing interests in marital property. The divorce court's exclusive jurisdiction over the marital estate includes not only the power to equitably divide the marital property between the spouses, but it also includes the power to determine a third party's interest in the property.").  Thus, it is up to the Illinois divorce court to determine whether Steven's LLC membership interests are marital property or not.  Accordingly, for purposes of a *Colorado River* analysis, the Illinois state court has taken jurisdiction over the property in question, Steven's LLC membership interests and any distribution payments resulting

therefrom.

Second, Florida is not a convenient forum for this dispute.  Of the three parties named in this suit, two (Jeanette and Schiller DuCanto) are domiciled in Illinois while one (Steven) is domiciled in Florida.  In terms of non-party witnesses, it appears that most or all of the limited liability companies involved in Count I, including the entity that obtained a charging order against Steven (Pami Grand Too LLC), are Delaware companies.  Further, the charging order stems from a judgment that Pami Grand Too LLC's predecessor-in-interest obtained against Steven in Indiana.  Therefore, the only relationship this matter appears to have with Florida is Steven's current domicile.

Third, allowing this case to proceed in this forum will necessarily result in piecemeal (and potentially conflicting) litigation.  There is no question that regardless of this Court's determination on the marital property issue, the Illinois divorce court will make its own ruling on that question.  Indeed, the Illinois court has the power to enjoin Steven from attempting to skirt its jurisdiction by filing the present suit.  *See In re Marriage of Baltzer*, 502 N.E.2d 459, 463 (Ill. App. Ct. 1986) ("A court which first acquires jurisdiction retains jurisdiction to the exclusion of all other courts until its duty has been fully performed. A court has the power, if not the duty, to protect its prior rights to jurisdiction over a controversy and for that purpose may issue an injunction restraining persons from proceeding in other courts.").  There is simply no need for this Court to expend its resources making a ruling on an issue that is properly before a separate court, which has jurisdiction over all issues relating to Jeanette and Steven's marital dissolution.

Fourth, the Illinois divorce proceeding began on October 22, 2021, over two years prior to Steven filing the instant lawsuit. *See* Ex. A, Divorce Petition. Thus, Illinois obtained jurisdiction long before this Court.

Fifth, state law will determine the issues raised in Count I of Steven's Complaint, which raises questions of marital property and priority of distributions, neither of which implicates federal law.

Sixth, the Illinois divorce court can and will protect the parties' rights. As stated above, it is wholly within the divorce court's province to determine whether Steven's membership interests in the LLCs constitute marital property. There is simply no reason for Steven's to have instituted a separate lawsuit in another state for a ruling on that issue, which will indisputably be resolved in the pending divorce case. With respect to the other issue raised in Count I of the Complaint (whether Jeanette or Pami Grand Too LLC has priority over Steven's LLC distributions if those distributions are deemed marital property), the divorce court can resolve that question as well. Illinois divorce courts are well equipped to consider the claims of third parties to alleged marital property. *See, e.g., In re Marriage of Olbrecht*, 597 N.E.2d 635, 640 (Ill. App. Ct. 1992) ("Consideration must be given to addressing the claims of a third party to alleged marital property."). And to the extent Steven may argue that Pami Grand Too LLC must be made a party to the divorce case in order for the divorce court to rule on the priority question, there is nothing preventing Steven from filing a third-party suit against Pami Grand Too LLC in the divorce proceeding. *See In re Marriage of Peshek*, 412 N.E.2d 698, 703 (Ill. App. Ct. 1980) ("We agree with the court in *Kaladic* that a third-party holding alleged marital property should be brought into the dissolution proceeding by a third-party complaint and proper summons[.]"). The ability of Illinois divorce courts to consider third party claims to potential marital property was explained by

the Illinois appellate court in *In re Marriage of Schweihs*:

> The trial court in the domestic relations division already had jurisdiction of the Schweihs and the property pursuant to the dissolution action. By allowing the joinder of Liberty in that action, the court acted to preserve the marital asset and the Schweihs' equity in it while at the same time providing a forum for Liberty to seek relief from any impairment of its security interest by the mortgage payment default. In fact, the record reveals that the trial judge suggested that Liberty bring its concerns before the court by appropriate motion or pleading.

584 N.E.2d 472, 477 (Ill App. Ct. 1991).  Therefore, all of the relief sought in Count I of the Complaint can and should be obtained in the pending divorce proceeding.

Finally, while there is no pertinent federal statute evincing a policy that favors abstention, the Supreme Court has articulated a "domestic relations exception" to jurisdiction, which "divests the federal courts of jurisdiction over any action for which the subject is a divorce, allowance of alimony, or child custody." *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994) (citing *Barber v. Barber*, 62 U.S. (1 How.) 582, 584, 16 L. Ed. 226 (1859).  "[W]here the requested federal remedy overlaps the remedy at issue in the state proceeding," a federal suit is considered "inextricably intertwined" with a state domestic proceeding, "thereby depriving the federal court of subject matter jurisdiction." *Wallace v. Wallace*, 736 F.3d 764, 767 (8th Cir. 2013).  "

"[C]ognizant of the fact that property-distribution and alimony arrangements necessarily accompany a divorce, exist in inextricable relation to each other, and jointly declare rights and obligations arising from marital status under state law, other circuits have also recognized that the domestic relations exception covers attempts to determine or modify not only alimony awards but also the division of marital property pursuant to a divorce." *Irish v. Irish*, 842 F.3d 736, 741 (1st Cir. 2016) (citing *McCavey v. McCavey-Barnett*, 629 F. App'x 865, 867 (11th Cir. 2015)).  The domestic relations exception to jurisdiction "reflects an understanding that the federal forum is inappropriate and reinforces the exception's policy rationale: state courts are experts at dividing

marital property, entering the necessary decrees, and handling the sensitive conflicts that follow." *Id*.

Here, the domestic relations exception to jurisdiction applies (on its own or in conjunction with the *Colorado River* doctrine) to deprive this Court of jurisdiction over Count I of the Complaint. The marital property status of Steven's membership interests in the LLCs and the effect of that status on the priority of distribution payments made by those LLCs as it pertains to Steven's share of the marital estate are quintessential domestic issues that should be resolved by the Illinois divorce court, which has a strong interest in resolving *all* aspects of Jeanette and Steven's marital dissolution. Steven is no doubt cognizant of this fact and is engaging in forum shopping to skirt the jurisdiction of the Illinois divorce court. This Court should not countenance his gamesmanship. Count I should be dismissed.

## II.   COUNT II OF THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) AS IT IS BARRED BY THE FULL FAITH AND CREDIT CLAUSE OF THE U.S. CONSTITUTION

### A.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss, a complaint must state a facially plausible claim, that is, a claim supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "Accordingly, the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Id*.

### B.  Full Faith and Credit Clause Bars Count II

The Full Faith and Credit Clause of the United States Constitution requires states to recognize and give effect to the "public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1.  "The very purpose of the full faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin."  *Milwaukee Cty. v. M. E. White Co.*, 296 U.S. 268, 276-77 (1935).  The Supreme Court explained the scope of the Full Faith and Credit Clause in the context of state court judgments as follows:

> With respect to judgments, "the full faith and credit obligation is exacting." *Baker v. General Motors Corp.*, 522 U. S. 222, 233, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998). "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." *Ibid*. A State may not disregard the judgment of a sister State because it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits. On the contrary, "the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." *Milliken v. Meyer*, 311 U. S. 457, 462, 61 S. Ct. 339, 85 L. Ed. 278 (1940).

*V.L. v. E.L.*, 577 U.S. 404, 407 (2016).

Critical here is the fact that there is "no roving 'public policy exception' to the full faith and credit due judgments[.]"  *Baker v. GMC*, 522 U.S. 222, 225 (1998).  "The Supreme Court thus continues to reject any notion that a state may elevate its own public policy over the policy behind a sister state's judgment and thereby disregard the command of the Full Faith and Credit Clause." *Ledoux-Nottingham v. Downs*, 210 So. 3d 1217, 1223 (Fla. 2017).

The Florida Supreme Court's decision in *Ledoux-Nottingham* aptly illustrates these principles.  There, the petitioner filed suit in Florida state court seeking to modify a judgment

entered by a Colorado state court ordering grandparent visitation with the petitioner's minor children.  The petitioner argued that the Colorado judgment explicitly violated article I, section 23 of the Florida Constitution.  *Ledoux-Nottingham v. Downs*, 210 So. 3d 1217, 1218 (Fla. 2017). The Florida Supreme Court affirmed the trial court's denial of the petition pursuant to the Full Faith and Credit Clause of the U.S. Constitution.  The court explained its ruling as follows:

> Although we have previously held unconstitutional numerous Florida statutes providing for grandparent visitation as violative of Florida's right of privacy, the question presented here is not whether the Grandparents are entitled to visitation under Florida law, but whether Florida is required to enforce the Colorado order despite the fact that entry of a similar judgment by a Florida court under the same circumstances would be prohibited by the Florida Constitution, and the answer is yes.

*Id*. at 1223.

The same analysis applies here.  Steven's Complaint does not allege that the Illinois state court lacked jurisdiction over Steven to enter the body attachment order in the underlying divorce proceeding.  Instead, Steven's only qualm with the body attachment order is his assertion that it violates the Florida Constitution.  [ECF No. 1-1., p. 15-16, ¶¶ 42-44, 51-52].  Whether the body attachment order violates the Florida Constitution is irrelevant since it was entered in Illinois pursuant to Illinois law.  The Full Faith and Credit Clause of the U.S. Constitution compels Florida to enforce the body attachment order even if it violates the public policy or constitution of Florida since it was validly entered by an Illinois state court with jurisdiction over the parties.  *See, e.g., Ledoux-Nottingham*, 210 So. 3d at 1223.

WHEREFORE, Defendants, JEANETTE IVANKOVICH and SCHILLER DuCANTO & FLECK LLP, respectfully request that the Court dismiss Plaintiff's Complaint with prejudice and grant any other relief the Court deems just.

Respectfully submitted,

/s/ Alexandra L. Tifford
Alexandra L. Tifford
Fla. Bar No. 0178624
Email: atifford@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:    (305) 789-9201

and

/s/ Joseph R. Marconi
Joseph R. Marconi
*pro hac vice application pending*
Email: marconi@jbltd.com
Johnson & Bell
33 West Monroe Street, Ste. 2700
Chicago, IL 60603-5404

/s/Ramses Jalalpour
Ramses Jalalpour
*pro hac vice application pending*
Email: jalalpourr@jbltd.com
Johnson & Bell
33 West Monroe Street, Ste. 2700
Chicago, IL 60603-5404

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2024, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Alexandra L. Tifford
Alexandra L. Tifford

**SERVICE LIST**

CASE NO. 23-cv-24894-FAM

Allison Rub-Rodriguez
Email: allison@repinespa.com
Allison Rub-Rodriguez, P.A.
3301 Ponce de Leon Blvd., Suite 200
Coral Gables, FL 33134
*Counsel for Plaintiff*

Jason Wandner
Email: jason@wandnerlaw.com
Law Offices of Jason M. Wandner, P.A.
100 N. Biscayne Blvd., Ste. 1607
Miami, FL 33132
*Counsel for Plaintiff*