All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
  to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED
2/9/2024 5:44 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021D009220
Calendar, E
26355581

FILED DATE: 2/9/2024 5:44 PM   2021D009220

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:                        )
                                              )
JEANETTE IVANKOVICH,                          )
                    Petitioner,               )
                                              )
         And                                  )   No. 2021 D 009220
                                              )
STEVEN IVANKOVICH,                            )
                    Respondent.               )

**MOTION FOR LEAVE TO JOIN THIRD PARTIES IVANKOVICH FAMILY LLC,
A&O FAMILY LLC (ILLINOIS), A&O FAMILY LLC (FLORIDA), P2 PORTFOLIO
MANAGING MEMBER LLC, ATLAS APARTMENT HOMES LLC, OVERLOOK
MANAGING MEMBER LLC, GLENCOE FAMILY DWELLING LLC, NORTH
AMERICAN CONDOMINIUM SOLUTIONS LLC, OLD TOWN PROPERTY
VENTURES LLC, ANTHONY IVANKOVICH, AND OLGA IVANKOVICH AS
NECESSARY THIRD PARTIES**

NOW COMES the Petitioner, JEANETTE IVANKOVICH ("Jeanette"), by her counsel,

SCHILLER, DU CANTO AND FLECK, and for her Motion for Leave to Join Third Parties

Ivankovich Family LLC, A&O Family LLC (Illinois), A&O Family LLC (Florida), P2 Portfolio

Managing Member LLC, Atlas Apartment Homes LLC, Overlook Managing Member LLC,

Glencoe Family Dwelling LLC, North American Condominium Solutions LLC, Old Town

Property Ventures LLC, Anthony Ivankovich, and Olga Ivankovich as Necessary Third Parties

pursuant to Section 2-405 and 2-406 of the Illinois Code of Civil Procedure (735 ILCS 5/2-405

and 735 ILCS 5/2-406), Sections 2 and 5 of the Uniform Fraudulent Transfer Act (740 ILCS

160/2 and 740 ILCS 160/5), and Sections 5/102 and 5/403 of the Illinois Marriage and

Dissolution of Marriage Act (750 ILCS 5/102 and 750 ILCS 5/403), hereby states as follows:

7470059_2.docx

DocuSign Envelope ID: 0D95E39C-9D45-485C-ACC1-CABA2F87F97C

FILED DATE: 2/9/2024 5:44 PM   2021D009220

## PREFATORY MATTERS

A.    **In 2019, at a time the parties' marriage was undergoing an irretrievable breakdown, Steven put "a lot" of his "own personal assets into entities in which he had an interest in**."[1] Upon information and belief, this was the beginning of the fraud perpetrated against the marital estate by Steven, in conjunction with various LLCs, Anthony Ivankovich, and Olga Ivankovich. Steven has utilized his parents and various LLCs as both a shield to protect himself from creditors (including Jeanette) and as a sword to financially abuse Jeanette during the pendency of this case.

B.    If there was any doubt that Steven, through and by the LLCs, along with his parents, were conspiring to prevent Jeanette from gaining access to information and to her marital assets, their plotting became clear when, in January 2024 they produced a "Joint Defense Agreement," agreeing among other matters to work with one another to "(a) exchange information, legal theories, and other materials related to the Lawsuit otherwise protected by the attorney-client privilege, work product doctrine… (b) to pool their respective work product in a joint and common defense effort." A copy of the Joint Defense Agreement is attached hereto by reference only as **Exhibit "A"**.

C.    As evidenced throughout this litigation, unlimited monies appear to fall from the sky for Steven's use. These funds allegedly come from either: (1) Steven's mother, Olga Ivankovich ("Olga"); (2) Steven's father, Anthony Ivankovich ("Anthony"); and/or (3) an LLC

---

[1] Transcript of Proceedings before the Honorable Sharon Johnson Coleman (*Zhu Zhai Holdings Limited and Peter Pui Tak Lee v. Steven Ivankovich*, 20 C 4985) at 83 (lines 8-11). Moreover, Steven has "testified that he **transferred his considerable assets to the…LLCs, and that he had the ability to move money in and out of the entities**." ¶ 8 of Order Appointing Special Master. A true and correct copy of the Order Appointing Special Master entered on January 19, 2024 by the Honorable Sharon Johnson Coleman (*Zhu Zhai Holdings Limited and Peter Pui Tak Lee v. Steven Ivankovich*, 20 C 4985) is attached hereto as **Exhibit "CC."**

DocuSign Envelope ID: 0D95E39C-8D45-485C-ACС1-CABA2F87F97C

in which Steven allegedly has "no interest" but nevertheless will pay for his expenses and/or allow Steven to incur marital debt.

      D.      In this case, Steven, his parents, and various business entities in which Steven has an ownership interest and/or control over have created an elaborate, intertwined web with two goals in mind as it relates to the divorce proceeding: (1) to eviscerate Jeanette's marital property rights; and (2) to hide income and assets for Steven for purposes of evading support. Steven's strategy in furtherance of these goals, his modus operandi, is simple: a textbook shell game. According to Steven's own testimony, it is "his understanding" that "cash can flow freely between" entities owned by the Ivankovich family.  A true and correct copy of Motion for Turnover of Funds Held by Debtor Ivankovich, P2 Portfolio Managing Management LLC, Ivankovich Family LLC, or, Alternatively, an Order Prohibiting Transfer of Funds filed on June 16, 2022 is attached hereto as **Exhibit "B"**.

      E.      For better or worse, Steven's convoluted web of LLCs have served effectively to shield income and assets from Steven's many creditors; however, Steven's interest in all of these LLCs are presumed to be marital, as Steven acquired his interest therein during the parties' marriage. 750 ILCS 5/503(b)(1). This Court must make a determination as to the assets, liabilities, and income of Ivankovich Family LLC, A&O Family LLC, P2 Portfolio Managing Member LLC, Atlas Apartment Homes LLC, Glencoe Family Dwelling LLC, Overlook Managing Member LLC, North American Condominium Solutions LLC, and Old Town Property Ventures LLC, and, in so doing, must determine Jeanette's rights in same.

      F.      Section 102 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/102 (8), (10)) provides that this Court has the duty to preserve the marital estate and to make a reasonable provision for spouses and minor children during and after the litigation.  Steven's

DocuSign Envelope ID: 0D95E39C-9D45-485C-AC61-CABA2F87F97C

FILED DATE: 2/9/2024 5:44 PM   2021D009220

demonstrated ability to manipulate and control the assets held in Ivankovich Family LLC, A&O Family LLC (Illinois and Florida), P2 Portfolio Managing Member LLC, Atlas Apartment Homes LLC, Glencoe Family Dwelling LLC, Overlook Managing Member LLC, North American Condominium Solutions LLC, Old Town Property Ventures LLC and the income generated therefrom impedes this Court from upholding its duties under Section 102.

G.     Therefore, to avoid the impairment of any potential obligations owed to third parties and to preserve the marital estate it is necessary to join the Ivankovich Family LLC, the A & O Family LLCs, the P2 Portfolio Managing Member LLC, the Atlas Apartment Homes LLC, the Glencoe Family Dwelling LLC, the North American Condominium Solutions LLC, Old Town Property Ventures LLC, and Overlook Managing Member LLC, as well as Steven's parents, Anthony and Olga Ivankovich, as third parties to the pending domestic relations action[2].

H.     The LLCs, especially Atlas, A&O, Ivankovich Family and P2, have already made it clear to this Court that they do not believe the Court has the power to order them to do anything since they are not under the "jurisdiction" of the Court.  Yet, they have dipped their toes into this matter on several occasions by filing motions to obstruct, delay and hinder access to information, including their most recent filing served on January 19, 2024 seeking to quash a subpoena to Celadon.  The LLCs have counsel who have filed appearances in this matter, have attended court proceedings, even when not arguing anything, and have signed a "Joint Defense Agreement" to work collectively with Steven's attorneys.  The LLCs cannot have it both ways: filing motions and obstructing when convenient and helpful to Steven and claiming lack of jurisdiction or ability to comply when helpful to Jeanette.  The LLCs are nothing more than Steven's alter ego – clearly controlled by him, as he is the managing member of all of them.  He

---

[2] This Court has the authority to join these parties to the instant action pursuant to Section 2-405(a) of the Illinois Code of Civil Procedure (735 ILCS 5/2-405(a)) and Section 403(d) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/403(d)).

7470059_2.docx

DocuSign Envelope ID: 0D95E39C-8D45-485C-AC61-CABA2F87F97C

FILED DATE: 2/9/2024 5:44 PM   2021D009220

uses them to control documents, information, and cash flow to his advantage and to Jeanette's detriment. The Court should not countenance this conduct. They are necessary parties to this action.

I.      For the reasons set forth herein, the nine LLCs detailed herein and Anthony and Olga Ivankovich (collectively referred to herein as "Steven's parents") must be added as third-party defendants to: (1) protect Jeannette's rights to support and allocation of an equitable share of her marital property; and (2) to enable the court to make a complete determination of the controversy in this case.

## FACTS COMMON TO ALL COUNTS

1.      Since Jeanette filed her Petition for Dissolution of Marriage, Steven's primary goal has been to avoid providing financial support for his wife and children and to deprive Jeanette of funds for legal representation in the divorce, including $425,000 ordered by this court for attorney's and expert fees. Steven has thus far stripped Jeanette and the children of housing, transportation, extracurriculars, food, and money for all necessities of life.

2.      On August 31, 2022, Steven testified[3] that from August 2020 until the end of 2021 (when Jeanette filed her Petition for Dissolution of Marriage) **Steven's net worth went from approximately $55,367,404 to $0**. Steven further testified that his net worth was utilized to pay obligations, capital calls, and expenses of LLCs in which he had an interest. A true and correct copy of Plaintiff's Response to Pilgram Warwick LLC, Pilgram Coulter LLC, Pilgrim Windtree LLC, Pilgrim Caribbean Isle LLC, Pilgram Forrest Park LLC, and Alliance HTFL LLC's Motion to Dismiss the Citation(s) issued to Walker & Dunlop, LLC filed on September 28, 2022 is attached hereto and incorporated herein as **Exhibit "C"**.

---

[3] Steven testified in the United States District Court for the Northern District of Illinois in *Zhu Zhai Holdings, Ltd. v. Ivankovich,* 1:2020 CV 4985. *See* Record of Proceeding Before Honorable Sharon Johnson Coleman dated at 58 (lines 23-25); *Id.* at 59 (line 1).

7470059_2.docx

DocuSign Envelope ID: 0D95E39C-9D45-485C-ACC1-CABA2F87F97C

3.      These funds were fraudulently transferred out of the marital estate pursuant to 740 ILCS 160/5(a)(1) and 740 ILCS 160/5 (b)(2)-(5), (7), and (9). Upon information and belief, Steven transferred these funds in order to avoid creditors and concealed these transfers from Jeanette.

4.      LLCs in which Steven has a known interest are: (1) Ivankovich Family LLC, (2) A & O Family LLC (Illinois and Florida); (3) P2 Portfolio Managing Member LLC; (4) Glencoe Family Dwelling LLC; (5) Overlook Managing Member LLC; and (5) Atlas Apartment Homes LLC. Upon information and belief, Steven also has interests in North American Condominium Solutions LLC and Old Town Property Ventures LLC. By Steven's own admission, these LLCs were funded with **marital money**[4]. Therefore, to preserve the marital estate, this Court must join those LLCs into the instant matter.

5.      On May 18, 2023, an Interim Fee Order was entered which required Steven to pay Schiller DuCanto & Fleck LLP Four Hundred Thousand Dollars ($400,000) and Twenty-Five Thousand Dollars ($25,000) for the appointment of a forensic accounting expert within 45 days (by July 3, 2023). A true and correct copy of the May 18, 2023 Interim Fee Order is attached hereto and incorporated herein as **Exhibit "D"**.

6.      On July 6, 2023, Jeanette filed her Verified Petition for Rule to Show Cause and for Adjudication of Indirect Civil Contempt for Violation of the May 18, 2023 Interim Fee Award Order. A true and correct copy of Jeanette's Verified Petition for Rule to Show Cause and for Adjudication of Indirect Civil Contempt for Violation of the May 18, 2023 Interim Fee Award Order is attached hereto and incorporated herein by reference only as **Exhibit "E"**.

---

[4] Steven testified to funding these LLCs during the marriage; therefore, there is a presumption that the monies used to fund same are marital.

7470059_2.docx

FILED DATE: 2/9/2024 5:44 PM   2021D009220

7.      On September 6, 2023, this Court entered an order holding Steven in indirect civil contempt of court for his failure to comply with the May 18, 2023 Interim Fee Award. That same day, a Body Attachment Order was entered against Steven for his failure to appear in-person in court for hearing pursuant to this Court's July 14, 2023 Order. A true and correct copy of the September 6, 2023 Order of Adjudication of Indirect Civil Contempt and/or Order of Commitment and the September 6, 2023 Body Attachment Order are attached hereto and incorporated herein as **Exhibit "F"**.

8.      On November 6, 2023, this Court entered an order which required Steven, starting on November 1, 2023, to pay child support in the amount of $6,933 per month and $14,180 per month as and for temporary maintenance. In addition, Steven was ordered to pay a lump sum of $506,712 for retroactive support to Jeanette for the period of October 25, 2021 through October 31, 2023. A true and correct copy of the Order entered on November 6, 2023 is attached hereto as **Exhibit "G"**.  Steven did not pay.  Instead, he filed a Motion to Reconsider.

9.      Steven has made unsubstantiated claims at almost every hearing in this case that he has had no assets in his name for many years, except for the former marital residence which is currently subject to a foreclosure action.  He further claims that he generates no income, is essentially a leach living off the good will of his parents, and that all his expenses are paid either directly or indirectly by his parents, Anthony and Olga Ivankovich.  Steven has used this excuse to avoid payment of support and compliance with this Court's orders.  At the same time as Steven cries poor, Steven lives the life of the rich and famous.  Steven has spent time on a $3.5 million mega yacht named the "Octopussy," and spent the summer of 2023 galivanting in Monaco and France. He has offered to take the children on numerous vacations to exotic locations, including to Iceland, where they would take a helicopter ride to see the volcanoes,

DocuSign Envelope ID: 0D95E39C-9D45-485C-ACG1-CABA2F87F97C

Monaco, Hawaii and Colorado for skiing. Upon information and belief, Steven is spending time in both the Maldives and Dubai, returning at times to Florida.

10.      Due to Steven's failure to comply with discovery and Jeanette's limited ability to pursue discovery due to lack of funds, as of this filing the identified marital assets are: (1) the marital residence located at 235 W. Menomonee Street, Chicago, Illinois and 234 W. Willow Street, Chicago, Illinois (collectively referred to herein as "Menomonee Residence") which is currently in foreclosure[5] (2) interest in numerous business entities[6], including but not limited to, P2 Portfolio Managing Member, LLC ("P2"), Ivankovich Family LLC ("Ivankovich Family"), and A & O Family LLCs (Florida and Illinois) (collectively "A&O"), Overlook Managing Member LLC, Atlas Apartment Homes LLC, Glencoe Family Dwelling LLC, North American Condominium Solutions LLC, Old Town Property Ventures LLC (hereinafter collectively referred to as "Family Partnerships" or "LLCs"); (3) The 401 N. Wabash residence which was purchased with funds from the Family Partnerships; (4) the unknown location of more than $60 million in funds transferred from the Celadon Financial Group accounts during the pendency of this litigation; and (5) 233 West Menomonee Street, Chicago, Illinois (the residence next door to the marital residence).

11.      If a necessary party is not made a party to a lawsuit, the absent party or entity will not be subject to this Court's jurisdiction and orders.

12.      As set forth more fully below, a complete determination of the matter before this Court cannot be adjudicated without joining the LLCs, Olga Ivankovich, and Anthony

---

[5] A foreclosure action is pending in the Chancery Division of the Circuit Court under Case Number 2019 CH 14866.
[6] Upon information and belief, this also includes, but is not necessarily limited to, PILGRIM Windtree LLC, PILGRIM Coulter LLC, PILGRIM Warwick LLC, PILGRIM Caribbean Isle LLC, PILGRIM Forest Park LLC, Alliance HTFL LLC, Atlas P2 Managing Member LLC, P2 Portfolio Investor Member, LLC, Premiere Orlando Portfolio Two LLC, AAPV Member, LLC, Atlas Alexandria & Parc Vue, LLC, ACL Member LLC, Atlas Crowntree Lakes, LLC, Atlas Brookview Managing Member, LLC, Atlas Brookview Investor Holdings, LLC, and Atlas Brookview Mezzanine LLC.

Ivankovich.  The participation of the above entities and persons are necessary to permit the Court to make a complete determination of the rights of the marital estate in the ownership, assets, and income generated therefrom for purposes of supporting Jeanette and the parties' minor children and to preserve and eventually divide marital assets.

13.    Until such time as this Court joins these necessary parties to this matter, Steven will continue to undermine the authority of this court and deprive Jeanette of her rightful share of marital property and deprive Jeannette and the children access to funds from which to support themselves.

14.    If Jeanette's Motion to Join is granted, Jeannette will file her third-party complaint and/or seek leave to file her Amended Petition for Dissolution of Marriage against the third parties.

**LEGAL AUTHORITY**

15.    Section 2-405 of the Illinois Code of Civil Procedure provides, in pertinent part:

"§ 2-405.  Joinder of defendants.  (a) **Any person may be made a defendant who, either jointly, severally or in the alternative, is alleged to have or claim an interest in the controversy, or in any part thereof**, or in the transaction or series of transactions out of which the controversy arose, or **whom it is necessary to make a party for the complete determination or settlement of any question involved therein**, or against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions, regardless of the number of causes of action joined." 735 ILCS 5/2-405 (emphasis added).

16.    Authority to join a third person or entity as a party to dissolution of marriage proceeding exists under section 2-406 of the Illinois Code of Civil Procedure (735 ILCS 5/2-406), which provides, in pertinent part, as follows:

"If a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in. If a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct such person to be made a party."

9

7470059_2.docx

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87507C

17.     A party is necessary to a full determination of the issues if the party is "one whose presence in the suit is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence; (2) to reach a decision which will protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy." *In re Marriage of Devick*, 315 Ill. App. 3d 908, 913–14 (2d Dist. 2000).

18.     Moreover, Section 403(d) of the Illinois Marriage and Dissolution of Marriage Act states that "The court may join additional parties necessary and proper for the exercise of its authority under this Act." 750 ILCS 5/403(d).

19.     It is well-settled that necessary third parties may be joined in domestic relations cases. See, e.g., *In re Marriage of DiFiglio*, 2016 IL App (3d) 160037, ¶¶ 5-6; *IRMO Devick*, 315 Ill. App. 3d at 913-14; *In Re Marriage of Schweihs*, 222 Ill.App.3d 887, 895-96 (1st Dist., 1991) (affirming joining third party in dissolution proceeding).

20.     It is reversible error for the trial court to proceed to final judgment without the involvement of all parties necessary to the litigation. *Bank of Homewood v. Chapman*, 257 Ill.App.3d 337, 347 (1st Dist. 1993).

21.     Section 503 of the IMDMA requires that the Court distribute marital property in just proportions. 750 ILCS 5/503. Thus, if a third party is holding alleged marital property, the third party should be joined in the dissolution action. *See In re Marriage of Peshek*, 89 Ill. App. 3d 959, 965 (1st Dist. 1980) (a third party holding alleged marital property should be brought in to the dissolution proceeding as a necessary party). Courts have also held that the joinder of parties or entities in dissolution of marriage proceedings is proper where it is necessary to preserve a marital asset. *In re Marriage of Devick*, 315 Ill. App. 3d 908, 914 (2d Dist. 2000).

FILED DATE: 2/9/2024 5:44 PM   2021D009220

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87507C

22.     In addition, joinder is also appropriate if the third party acquired property through a sham transaction.  *See In re the Marriage of Pahlke,* 120 Ill. App. 3d 1009, 1015 (1st Dist. 1983) (person alleged to have come into possession of the marital home through a sham transaction was a proper third party defendant)."); *see also In re Marriage of Shehade*, 137 Ill. App. 3d 692 (1st Dist. 1985) (affirming decision finding the assignment of real property by the husband to the brother was a sham and holding it to be null and void where brother had been joined as a third-party defendant).

23.     It is well established that "fraud against marital property is not to be condoned even though it occurs before dissolution." *Hofmann v. Hofmann,* 94 Ill.2d 205, 220 (1983). When the characterization of a transfer of marital assets is questioned by a spouse, fraud is properly assessed by referring to the donative intent of the settlor. *Id.*,

24.     An "illusory" transfer is "one which takes back all that it gives," while a "colorable" transfer is "one which appears absolute on its face but due to some secret or tacit understanding between the transferor and the transferee the transfer is, in fact, not a transfer because the parties intended that ownership be retained by the transferor." *Johnson v. LaGrange State Bank*, 73 Ill. 2d 342, 359 (1978).

25.     Where a party uses the corporate form to defraud the marital estate, that corporate form may be disregarded "where the corporation is merely the alter ego or the business conduit of another dominating personality." *Tower Invs., LLC v. 111 E. Chestnut Consultants, Inc*., 371 Ill. App. 3d 1019, 1033 (1st Dist. 2007).  "Illinois courts will pierce the corporate veil where: (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the parties who compose it no longer exist, and (2) circumstances are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances." *Id.*,

FILED DATE: 2/9/2024 5:44 PM   2021D009220

FILED DATE: 2/9/2024 5:44 PM   2021D009200

at 1033-34.  The veil should be pierced when it appears that something in the particular situation has "gone amiss." *Id.*, at 1033.

26.  "This doctrine fastens liability on the individual or entity that uses a corporation merely as an instrumentality to conduct that person's or entity's business." *Peetoom v. Swanson*, 334 Ill.App.3d 523, 527 (2d Dist. 2002).

27.  Finally, Section 5 of the Uniform Fraudulent Transfer Act states, in relevant part,

"(a) A transfer made or obligation incurred by a debtor is fraudulent, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred if, the debtor made the transfer or incurred the obligation:

(1) with the actual intent to hinder, delay or defraud any creditor of the debtor; or
(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(b)  In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." 740 ILCS 160/5

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2F87507C

28.     Section 2(g)(1) of the Uniform Fraudulent Transfer Act defines an "insider," who is an individual, as:

> (A) a relative of the debtor or of a general partner of the debtor;
>
> (B) a partnership in which the debtor is a general partner;
>
> (C) a general partner in a partnership described in clause (B); or
>
> (D) a corporation of which the debtor is a director, officer, or person in control" 740 ILCS 160/2(g)(1).

### COUNT I: MOTION FOR LEAVE TO JOIN IVANKOVICH FAMILY LLC

1-28.   Jeanette restates and realleges the allegations of Paragraphs 1-28 of the Prefatory Matters, Factual Background Common to All Counts and Legal Authority as if fully set forth herein.

29.     In the November 6, 2023 Order, this Court found that Steven Ivankovich held a 96% interest in Ivankovich Family LLC. Since the close of proofs at the hearing on Jeanette's Petitions for Support, Jeannette discovered that during the course of these divorce proceedings Steven amended the operating agreement of Ivankovich Family LLC and he is now the ***sole (100%) owner of Ivankovich Family LLC***.

30.     According to the Delaware Department of State, Ivankovich Family LLC ("Ivankovich Family") was formed on December 17, 2021, during a time when the parties' marriage was undergoing an irretrievable breakdown.

31.     Steven acquired his interest in Ivankovich Family during the parties' marriage. As such, Steven's interests therein are presumed to be marital property, and Jeanette has an interest in same.

32.     Amongst other assets owned by Ivankovich Family, Ivankovich Family has a bank account located at Celadon. According to account applications and documents titled in the

FILED DATE: 2/9/2024 5:44 PM   2021D009220

FILED DATE: 2/9/2024 5:44 PM   2021D009220

name of Ivankovich Family, Steven is the only principal with the ability to transfer funds out of the Ivankovich Family account. A true and correct copy of the Account Application and Agreement for Prime Brokerage Service for Ivankovich Family LLC dated June 29, 2022 is attached hereto and incorporated herein by reference only as **Exhibit "H"**.

33.     Between August 11, 2022, and September 5, 2023, Steven transferred approximately $64,008,739 from Ivankovich Family, P2, and A&O accounts at Celadon. A summary of the transferred funds from the A&O, Ivankovich Family, and P2 accounts at Celadon is attached hereto and incorporated by reference as **Exhibit "I"**.

34.     Steven is a defendant in *Zhu Zhai Holdings, Ltd. v. Ivankovich,* 1:2020 CV 4985 in the United States District Court for the Northern District of Illinois. Steven filed a Reply in that case wherein he attached the LLC agreements of P2 and Ivankovich Family.  The Reply, along with the Ivankovich Family LLC Agreement, was admitted into evidence in the support and fee hearings in this matter.

35.     The ***initial*** Ivankovich Family LLC Agreement, executed on December 17, 2021, undisputedly provides:

> (a) Steven has 96 of 100 voting shares;
>
> (b) Steven is the managing member;
>
> (c) the LLC is manager-managed;
>
> (d) Steven's parents and the two minor children each hold one membership unit;
>
> (e) Steven cannot be out voted as votes are in proportion to the membership interests of which Steven has 96 of 100;
>
> (f) Steven is the President of the LLC;
>
> (g) Members may be paid for any services provided in any capacity as a manager (Steven is), officer (Steven is), employee, independent contractor or otherwise;

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87597C

distributions of profits may be made from time to time when and if approved by a majority of the membership interests (i.e. approved by Steven);

(h) distributions, if made, must be made in proportion to membership interest (Steven has 96%); and perhaps most importantly "cash from the Company's business operations, as well as cash from a sale or other disposition of the Company's capital assets, may be distributed from time to time to the members in accordance with the membership interests, ***as may be decided by a majority of the membership interests***" (i.e. Steven and Steven alone).

A copy of the Reply with the LLC Agreements is attached hereto as **Exhibit "J"**.

36.     On February 22, 2022, during the pendency of this litigation, Ivankovich Family LLC's Limited Liability Agreement was amended and restated. The Amended and Restated Limited Liability Company Agreement of Ivankovich Family LLC unambiguously shows that: (a) ***Steven currently owns 100%*** of Ivankovich Family LLC and (b) "one hundred percent (100%) of the profits, losses, income, deductions of [Ivankovich Family LLC] shall be allocated to [Steven]. [Ivankovich Family LLC] may make distributions to [Steven] from time to time in its discretion." A true and correct copy of the Ivankovich Family LLC Amended and Restated Limited Liability Company Agreement dated February 22, 2022 is attached hereto as **Exhibit "K"**.

37.     As of August 31, 2023, Ivankovich Family LLC had a balance at Celadon of $2.25 million. In 2023, Steven has already transferred out approximately $16.75 million dollars in Ivankovich Family LLC funds alone to unknown destinations.  Steven has not provided any tracing information despite having a Supreme Court Rule 214-request outstanding.  A copy the Celadon Ivankovich Family LLC statements from 2022/23 are incorporated herein by reference only as **Exhibit "L"**.

38.     The money flowing through Ivankovich Family is marital income and assets which Steven is attempting to divert from the marital estate.

FILED DATE: 2/9/2024 5:44 PM   2021D009220

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87507C

FILED DATE: 2/9/2024 5:44 PM   2021D009220

39.     Ivankovich Family LLC is Steven. He is 100% owner, has authorized all withdrawals from Celadon, has not produced any records and has not substantiated any business purpose for the entity or the withdrawals.

40.     As noted, where a party – such as Steven, here - has used the corporate form to defraud the marital estate, that form may be disregarded "where the corporation is merely the alter ego or the business conduit of another dominating personality," and especially where something in the particular situation has "gone amiss." *Tower Invs., LLC*, 371 Ill. App. 3d at 1033. Illinois courts will pierce the corporate veil where: (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the parties who compose it no longer exist, and (2) circumstances are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances." *Id.*, at 1033-34.

41.     The Ivankovich Family LLC is a Delaware LLC.  Illinois decisions hold that efforts to pierce the corporate veil are governed by the law of the state of incorporation. *A.G. Cullen Const., Inc. v. Burnham Partners, LLC*, 2015 IL App (1st) 122538.

42.     Jeannette notes that in the September 11, 2023 "Combined Motion" to dismiss Jeanette's prior-filed Petition for a Temporary Restraining Order against Ivankovich Family LLC, A & O Family LLC and P2 Portfolio Managing Member LLC, counsel for the three entities - Mr. Cy Porras - is on the record that the relevant Illinois and Delaware statutes are "substantially the same" and "the laws would yield the same result." See the Combined Motion, at page 5, fn #1, attached hereto and incorporated herein as **Exhibit "M".**

43.     Significantly, however, as a matter of first impression, in *Manichaean Capital, LLC v. Exela Technologies, Inc.*, 251 A.3d 694 (2021), the Delaware Courts – for the first time – recognized the validity of "reverse veil-piercing" for Delaware-formed LLCs. While traditional

7470059_2.docx

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87597C

FILED DATE: 2/9/2024 5:44 PM   2021D009220

veil piercing permits a court to render an individual liable in a judgment against a business entity in which the individual has an interest, when the entity "is in fact a mere instrumentality or alter ego of [the individual]," reverse veil piercing "**attaches liability to the entity for a judgment against the individuals who hold an ownership interest in that entity**." *Sky Cable, LLC v. DIRECTV, Inc*., 886 F.3d 375, 385 (4th Cir. 2018) (Emphasis added).

44.     The *Manichaean Capital* court held that reverse veil-piercing targets the "hid[ing] of assets in plain sight to avoid paying a judgment" (251 A. 3d at 713) and that "where: (1) an LLC has a single member, (2) that LLC is the member's alter ego, and (3) that member is using the LLC as a fraudulent shield against judgment creditors, reverse veil-piercing is a tool available to the court to avoid fraud and injustice when other legal and equitable means are unavailing." *Id.* Although Delaware embraces and protects "corporate separateness," Delaware **"will not countenance the use of the corporate form as a means to facilitate fraud or injustice."** *Id.* (Emphasis added).

45.     Again, Jeanette notes that counsel for the Ivankovich Family LLC – Mr. Porras - cited the *Manichaean* decision and acknowledges that reverse veil piercing is available under Delaware law.  See **Exhibit "M",** at 10.

46.     In sum, the *Manichaean* decision establishes that there is no legal impediment to joining the Ivankovich Family LLC.

47.     An application of the aforementioned holding in *Devick* that joinder is proper to preserve a marital asset (315 Ill. App. 3d at 914) supports the finding that the Ivankovich Family LLC is indeed a necessary third party to this matter because this Court will be unable to make a complete determination of the controversy without Ivankovich Family because **the entire multi-**

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87527C

**million-dollar entity and the multi-millions of dollars it possesses, including the funds transferred from Celadon, are marital property**.

48.     Steven is the **sole owner** of Ivankovich Family. Joining Ivankovich Family LLC is form over substance yet will eviscerate Steven's attempts, as managing member of the LLC, to defraud the marital estate and prevent him from further hiding and moving Jeanette's marital assets.

49.     Because **Steven's 100% interest in Ivankovich Family is marital property**, Jeanette is entitled to an equitable distribution of same. Joining Ivankovich Family to the instant matter is necessary to protect Jeanette's interest in Ivankovich Family.

50.     Without joining Ivankovich Family to the instant matter, Jeanette's interest in the marital estate (including Ivankovich Family) will be left unprotected and able to be manipulated by the sole owner, Steven.

51.     If Ivankovich Family is not joined, this Court will play right into Steven's hands and give him what he so desperately wants: to deprive Jeanette of her right to marital property. Therefore, not only is joinder proper, but it is necessary to ensure that justice is served.

52.     On November 11, 2023, Ivankovich Family LLC, P2 Portfolio Managing Member LLC, Atlas Apartment Homes LLC, and A&O Family LLC (the "Plaintiffs") filed a Complaint for Equitable and Legal Relief in the Chancery Division of the Circuit Court of Cook County, Illinois (Case Number 2023 CH 09243) against Jeanette and Schiller DuCanto & Fleck, among other defendants. In that action, the Plaintiffs request monetary compensation in connection with alleged conduct occurring in the instant matter.

53.     Therefore, Ivankovich Family has already freely and voluntarily submitted itself to the jurisdiction of the Illinois courts.

7470059_2.docx

FILED DATE: 2/9/2024 5:44 PM   2021D009220

WHEREFORE, the Petitioner, JEANETTE IVANKOVICH, respectfully prays that this Honorable Court grant her the following relief:

A.      For the entry of an Order granting JEANETTE IVANKOVICH leave to cause service of process on Ivankovich Family LLC so as to join Ivankovich Family LLC into these proceedings as a third-party; and

B.      For such other and further relief as this Court deems just and equitable.

## COUNT II: MOTION FOR LEAVE TO JOIN P2 PORTFOLIO MANAGING MEMBER LLC

1-53.   Jeanette restates and realleges the allegations of Paragraphs 1-53 of the Prefatory Matters, Factual Background Common to All Counts, Legal Authority, and Count I as if fully set forth herein.

54.     According to the Delaware Secretary of State, P2 Portfolio Managing Member LLC ("P2") was formed on October 3, 2014.

55.     Steven acquired his interest in P2 during the parties' marriage[7]. As such, Steven's interests therein are presumed to be marital property, and Jeanette has a marital interest in same.

56.     As noted, Steven is a defendant in *Zhu Zhai Holdings, Ltd. v. Ivankovich,* 1:2020 CV 4985 in the United States District Court for the Northern District of Illinois. Steven filed a Reply in that case wherein he attached the LLC agreements of P2 and Ivankovich Family.  The Reply, along with the Ivankovich Family LLC Agreement, was admitted into evidence in the support and fee hearings in this matter.

57.     Amongst other assets owned by P2, it has a bank account located at Celadon. According to account applications and documents titled in the name of P2, Steven is the only principal with the ability to transfer funds out of the P2 account. A true and correct copy of the

---

[7] In the order entered on November 6, 2023, this Court made a finding that Steven owned 20% of P2.

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87527C

Account Application and Agreement for Prime Brokerage Service for P2 Portfolio Managing Member LLC dated July 7, 2022 by reference only as **Exhibit "N"**.

58.     As of August 31, 2023, P2's Celadon account was worth $3,972,791.

59.     An application of the aforementioned holding in *Devick* that joiner is proper to preserve a marital asset (315 Ill. App. 3d at 914) supports the finding that P2 is indeed a necessary third party to this matter.  The Court will need to characterize and distribute Steven's interest in P2 as a marital asset. Steven has already diverted over $4,000,000 million dollars from P2 during these proceedings, has failed to identify the location and use of the transfers and refuses to cooperate with supplying information or permitting Jeanette access to her marital property interest.

60.     **Steven's 20% interest in P2 is marital property**. Therefore, Jeanette is entitled to an equitable distribution of same. Joining P2 to the instant matter is necessary to protect Jeanette's interest in P2.

61.     Without joining P2 to the instant matter, Jeanette's interest in the marital estate will be left unprotected and subject to manipulation by Steven, the managing member and 20% owner.

62.     If P2 is not joined, this Court will play right into Steven's hands and give him what he so desperately wants - to deprive Jeanette of her right to marital property. Therefore, not only is joinder proper, but it is necessary to ensure that justice is served.

63.     Furthermore, because the Court will be required to value and distribute Steven's marital ownership interest in P2, any judgment entered in this matter will potentially have an impact on the organization and the other members.

7470059_2.docx

64.     In sum, because (1) Steven's interest in P2 is marital property; (2) the Court will be unable to preserve the marital estate; and (3) the Court will be unable to distribute Steven's interest in P2 unless P2 is joined as a necessary party to the instant action. *See Peshek*, 89 Ill. App. 3d at 965; 750 ILCS 5/403(d); 750 ILCS 5/503.

65.     Finally, P2 is subject to this Court's jurisdiction and may be made a party to these proceedings.

66.     As set forth above, P2 has freely and voluntarily submitted itself to the jurisdiction of Illinois courts when it filed suit in the Chancery Division of the Circuit Court of Cook County, Illinois (Case Number 2023 CH 09243).

WHEREFORE, the Petitioner, JEANETTE IVANKOVICH, respectfully prays that this Honorable Court grant her the following relief:

A.     For the entry of an Order granting JEANETTE IVANKOVICH leave to cause service of process on P2 Portfolio Managing Member LLC so as to join P2 Portfolio Managing Member LLC into these proceedings as a third-party; and

B.     For such other and further relief as this Court deems just and equitable.

## COUNT III: MOTION FOR LEAVE TO JOIN A&O FAMILY LLC (ILLINOIS) AND A&O FAMILY LLC (FLORIDA)

1-66.   Jeanette restates and realleges the allegations of Paragraphs 1-66 of the Prefatory Matters, Factual Background Common to All Counts, Legal Authority, and Counts I-II as if fully set forth herein.

67.     According to the Florida Department of State, A&O Family LLC (Florida) ("A&O Florida") was formed on March 13, 2008.

68.     According to the Illinois Secretary of State, A&O Family LLC (Illinois) ("A&O Illinois") was formed on or about June 3, 2021, and its principal business address is 1 East Erie

7470059_2.docx

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87507C

Street, Suite 525, Chicago, Illinois 60611. Further, it's registered agent is listed as Steven Ivankovich at 235 W. Menomonee St., Chicago, IL 60614.

69.     On May 17, 2023, Steven testified that, "there are two A&O Family LLCs; one that's a Florida company, and one that's an Illinois company. **I was an owner in both**." Transcript of Proceedings before Judge Powers dated May 17, 2023 at 217 (lines 12-15).

70.     Steven acquired his interest[8] in A&O Illinois and A&O Florida (collectively referred to herein as "A&O") during the parties' marriage[9]. As such, Steven's interests therein are presumed to be marital property, and Jeanette has an interest in same[10].

71.     Amongst other assets owned by A&O are two (2) bank accounts located at Celadon. According to account applications and documents titled in the name of A&O, Steven is the only principal with the ability to transfer funds out of one A&O account ("A&O Celadon Account #1")[11]. Steven also is an authorized principal with the ability to transfer funds out of the other A&O account[12] ("A&O Celadon Account #2"). A true and correct copy of the Account Application and Agreement for Prime Brokerage Service for A&O Family LLC (A&O Celadon Account #1) dated June 20, 2022, is attached hereto and incorporated herein by reference only as **Exhibit "O"**.

---

[8] In the order entered on November 6, 2023, this Court made a finding that Steven owned 80% of A&O.

[9] The parties were married on April 29, 2006 in Cook County, Illinois.

[10] In addition to A&O, P2, and Ivankovich Family, there are likely more marital businesses. In applying for accounts for various real estate partnerships of which he is a partner, Steven represents to have a net worth anywhere between $5,000,000 to $20,000,000, with liquidity of up to $3,000,000. In fact, as of June 28, 2022, Steven represented to Celadon under oath that he (a) was the President of Ivankovich Family LLC and (b) the financial condition/total assets of the company were "$19 million." Incorporated herein by reference only as Group Exhibit "P" are examples of Celadon and Stifel account applications and related documents wherein Steven makes representations about his significant net worth and liquidity. It's worth noting that while most of the Celadon and Stifel documents relate to the partnerships rather than Steven personally, he is the majority owner and individual member/manager of most of the entities, applies for the accounts, and exclusively controls the funds therein.

[11] Upon information and belief, Steven is the only principal with the ability to transfer funds out of A&O Account #1.

[12] Upon information and belief, Steven is also an authorized principal with the ability to transfer funds out of A&O Account #2.

FILED DATE: 2/9/2024 5:44 PM   2021D009220

FILED DATE: 2/9/2024 5:44 PM   2021D009220

72.     According to the Account Application for A&O Account #1, Steven has an 80% interest in A&O.

73.     As of August 31, 2023, the A&O accounts at Celadon were collectively worth $19,392,807. However, on October 2, 2023, Anthony Ivankovich allegedly authorized the transfer of $6,000,000 from A&O Account #2. This demonstrates that without adding A&O and Anthony Ivankovich to this case, this Court will be unable to preserve this marital asset.

74.     **Steven's 80% interest in A&O is marital property**. Therefore, Jeanette is entitled to an equitable distribution of same. Joining A&O to the instant matter is necessary to protect Jeanette's marital interest in A&O.

75.     An application of the aforementioned holding in *Devick* that joinder is proper to preserve a marital asset (315 Ill. App. 3d at 914) supports the finding that A&O is indeed a necessary third party to this matter because this Court will be unable to make a complete determination of the controversy without it.

76.     Without joining A&O to the instant matter, Jeanette's interest in the marital estate will be left unprotected and subject to manipulation by the managing member and majority owner, Steven Ivankovich.

77.     If A&O is not joined, this Court will play right into Steven's hands and give him what he so desperately wants: to deprive Jeanette of her right to marital property. Therefore, not only is joinder proper, but it is necessary to ensure that justice is served.

78.     In fact, Steven has already begun the process of depriving Jeanette of her right to marital property. On December 27, 2021[13], Steven (as manager), executed an Article of Amendment with the State of Illinois wherein he removed Jeanette as a manager of A&O

---

[13] Steven was served with process in this action on or about December 15, 2021.

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87527C

FILED DATE: 2/9/2024 5:44 PM   2021D009220

Illinois. A true and correct copy of the A&O Family LLC Illinois Articles of Amendment dated December 27, 2021 is attached hereto and incorporated herein as **Exhibit "Q"**

79.     As set forth above, A&O must be joined because any judgment entered in this matter will undoubtedly have an impact on the organizations.

80.     In sum, because (1) Steven's interests in A&O are marital property; (2) the Court will be unable to preserve the marital estate; and (3) the Court will be unable to distribute Steven's interests in A&O, A&O must be joined as a necessary party to the instant action. *See Peshek*, 89 Ill. App. 3d at 965; 750 ILCS 5/403(d); 750 ILCS 5/503.

81.     Finally, A&O is subject to this Court's jurisdiction and may be made a party to these proceedings.

82.     According to the Illinois Secretary of State, A&O Illinois' principal address is located at 1 East Erie Street, Suite 525, Chicago, Illinois 60611. Further, A&O Illinois' registered agent is listed as Steven Ivankovich at 235 W. Menomonee Street, Chicago, Illinois 60614[14]. Accordingly, A&O Illinois is subject to this Court's jurisdiction pursuant to 735 ILCS 5/2-209(a)(12).

83.     As set forth above, A&O Florida has participated in this litigation by filing motions to obstruct, delay and hinder access to information, including their most recent filing served on January 19, 2024 seeking to quash a subpoena to Celadon.  A&O Florida has counsel who have filed appearances in this matter, have attended court proceedings, even when not arguing anything, and have signed a "Joint Defense Agreement" to work collectively with Steven's attorneys.  A&O Florida cannot have it both ways: filing motions and obstructing when convenient and helpful to Steven and claiming lack of jurisdiction or ability to comply when

---

[14] As this Court is aware, 235 W. Menomonee Street is the parties' **marital residence**.

24

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2F87507C

helpful to Jeanette. As such, A&O Florida has submitted itself to the jurisdiction of Illinois courts.

84.    As set forth above, A&O has submitted itself to the jurisdiction of Illinois courts when it filed suit in the Chancery Division of the Circuit Court of Cook County, Illinois (Case Number 2023 CH 09243).

WHEREFORE, the Petitioner, JEANETTE IVANKOVICH, respectfully prays that this Honorable Court grant her the following relief:

A.    For the entry of an Order granting JEANETTE IVANKOVICH leave to cause service of process on A&O Family LLC so as to join A&O Family LLC into these proceedings as a third-party; and

B.    For such other and further relief as this Court deems just and equitable.

## COUNT V: MOTION FOR LEAVE TO JOIN GLENCOE FAMILY DWELLING LLC AS A NECESSARY THIRD PARTY

1-84.    Jeanette restates and realleges the allegations of Paragraphs 1-84 of the Prefatory Matters, Factual Background Common to All Counts, Legal Authority, and Counts I-IV as if fully set forth herein.

85.    On May 17, 2023, Steven testified to being a member of Glencoe Family Dwelling LLC ("Glencoe Family Dwelling") at its formation (during the parties' marriage) and to being the manager of same[15]. His membership interest - which was allegedly transferred - is presumed to be a marital asset.

86.    In addition to being a member and manager of Glencoe Family Dwelling, Steven also allegedly took a one million ($1,000,000) dollar loan from Glencoe Family Dwelling.

---

[15] Transcript of Proceedings before Judge Powers dated May 17, 2023 at 114 (lines 15-19); *Id*. at 115 (lines 23-24) through 116 (lines 1-6).

7470059_2.docx

FILED DATE: 2/9/2024 5:44 PM   2021D009220

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2F87527C

According to Steven, this loan was taken on or about November 1, 2021 - nine days after Jeanette filed her Petition for Dissolution of Marriage. The loan matured on October 31, 2023. See Transcript of Proceedings before Hon. Patrick Powers dated May 17, 2023 at 119 (lines 6-19). A copy of the Promissory Note between Glencoe Family Dwelling and Steven Ivankovich dated November 1, 2021 is attached hereto and incorporated herein by reference only as **Exhibit "R"**. A copy of the Transcript of Proceedings before Hon. Patrick Powers dated May 17, 2023 is attached hereto and incorporated herein as **Exhibit "S"**.

87. Steven allegedly used part of this loan from Glencoe Family Dwelling to pay his legal fees to Beermann LLP and to pay for the Air BnB that Jeanette and the children were residing in at one point during this litigation. See Transcript of Proceedings before Hon. Patrick Powers dated May 17, 2023 at 124 (lines 7-24).

88. The Uniform Fraudulent Transfer Act states that, "…an obligation incurred by a debtor is fraudulent, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred if, the debtor made the transfer or incurred the obligation…intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due…"

89. Steven has whined to this Court several times that he has not had a job, income, or the ability to obtain income since 2017. Yet, Steven and Glencoe Family Dwelling reasonably believed that Steven would be able to repay $1,000,000 (plus 5% interest) within two (2) years.

90. This loan was a colorable fraudulent transfer of funds from Glencoe Family Dwelling to Steven.

91. As explained above, a colorable transfer is one which appears legitimate, but due to a secret or tacit agreement between the transferor and the transferee, it is intended to be

26

7470059_2.docx

retained by the transferor. Here, Steven, upon information and belief, has an interest in Glencoe Family Dwelling. In essence, Steven is giving himself money through Glencoe Family Dwelling which is disguised as a loan which he is allegedly not capable of repaying.

92.     Either Steven has not a single penny to his name (which is false) and this transfer was fraudulent, or Steven has sufficient funds to repay this loan and therefore has lied to this Court about liquid funds at his disposal (which is likely the reality). If Steven has funds to repay Glencoe Family Dwelling, he has funds to pay his court-ordered obligations in this matter.

93.     An application of the aforementioned holding in *Devick* that joinder is proper to preserve a marital asset (315 Ill. App. 3d at 914) and in *Peshek* (89 Ill. App. 3d at 965) that a third party holding alleged marital property should be joined in the dissolution action support the finding that Glencoe Family Dwelling LLC is indeed a necessary third party to this matter given that Steven's interest in Glencoe Family Dwelling is a marital asset and the alleged $1,000,000 is a marital liability. Also, according to Steven's financial affidavit, Glencoe Family Dwelling pays several monthly expenses on his behalf.

94.     If Glencoe Family Dwelling is not joined, this Court will play right into Steven's hands and give him what he so desperately wants: to deprive Jeanette of her right to marital property. Therefore, not only is joinder proper, but it is necessary to ensure that justice is served.

95.     In sum, because (1) Steven's interest in Glencoe Family Dwelling is marital property; (2) the Court will be unable to preserve the marital estate; and (3) the Court will be unable to allocate the marital liability held by it, if any, Glencoe Family Dwelling must be joined as a necessary party to the instant action. *See Peshek*, 89 Ill. App. 3d at 965; 750 ILCS 5/403(d); 750 ILCS 5/503.

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2F87507C

96.     Glencoe Family Dwelling is subject to this Court's jurisdiction because its principal place of business is located in Illinois. According to the Illinois Secretary of State, Glencoe Family Dwelling LLC's principal business address is 1 East Erie Street, Chicago, Illinois 60611. Accordingly, Glencoe Family Dwelling is subject to this Court's jurisdiction pursuant to 735 ILCS 5/2-209(a)(12).

WHEREFORE, the Petitioner, JEANETTE IVANKOVICH, respectfully prays that this Honorable Court grant her the following relief:

A.     For the entry of an Order granting JEANETTE IVANKOVICH leave to cause service of process on Glencoe Family Dwelling LLC so as to join Glencoe Family Dwelling LLC into these proceedings as a third-party; and

B.     For such other and further relief as this Court deems just and equitable.

## COUNT VI: MOTION FOR LEAVE TO JOIN ATLAS APARTMENT HOMES LLC AS A NECESSARY THIRD PARTY

1-96.   Jeanette restates and realleges the allegations of Paragraphs 1-96 of the Prefatory Matters, Factual Background Common to All Counts, Legal Authority, and Counts I-V as if fully set forth herein.

97.     Steven is the **Chief Executive Officer, managing member and** ▇▇▇▇▇▇▇▇▇ **of Atlas Apartment Homes LLC**[16]. As it relates to marital money which flows through Atlas, Steven as ▇▇▇▇▇▇▇ a manager, has contributed and has received funds from Atlas. For example, as of August 30, 2021, Atlas'[17] manager was paid approximately ▇▇▇▇▇▇▇[18]. Atlas has refused to fully comply with the valid subpoena and give Jeanette any general ledgers for

---

[16] Atlas has already participated in this litigation. On June 28, 2022, Atlas Apartment Homes LLC ("Atlas") filed its appearance in the instant case.
[17] Atlas Apartment Holdings, LLC.
[18] Jeanette sent a subpoena to Atlas Apartment Homes, LLC requesting various records. As of the date of this filing, Atlas Apartment Homes has yet to completely comply with said subpoena. However, amongst the documents Atlas Apartment Homes LLC produced were Atlas Apartment Holdings LLC's 2021 General Ledger.

7470059_2.docx

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87527C

FILED DATE: 2/9/2024 5:44 PM  2021D009220

2022 or 2023. A true and correct copy of the Atlas Apartment Holdings LLC 2021 General Ledger is attached hereto and incorporated herein by reference only as **Exhibit "T**."

98.     Steven testified that, "I didn't cease working. I just stopped taking a salary. There was—there just wasn't enough revenue from the management company to pay all the salaries. So, you know, as CEO you're the first one that takes a hit…" Transcript of Proceedings before Hon. Patrick Powers dated May 17, 2023 at 176 (lines 1-8).

99.     Steven claims to not have been employed since either 2016 or 2017 (when he was "a real estate professional" with "Atlas Apartment Homes LLC"). Transcript of Proceedings before Hon. Patrick Powers dated April 13, 2023 at 117 at (lines 14-22).

100.     According to Atlas' website, it has **seven billion dollars in capitalization**. As of January 4, 2024, Steven Ivankovich executed Atlas Apartment Homes LLC's 2024 Foreign Limited Liability Company Annual Report filed with the Florida Secretary of State as the Chief Executive Officer and Managing Member. It is unfathomable that a company with seven billion dollars in capitalization cannot afford to pay its CEO for now what amounts to over seven years of service.[19]

101.     According to records received responsive to a subpoena issued to Andrew Hahm, Steven's accountant, Atlas Apartment Homes was ███████████ (with ███████████ ███████████) until █% was transferred to ███████████ on June 16, 2018, and █% was transferred to ███████████ on September 1, 2019; both transfers having occurred during a time when the marriage was undergoing an irretrievable breakdown[20]. Thus, according to Steven's

---

[19] Steven is also listed as the manager of another entity, Atlas Residential Management, LLC as of the annual report filed in Illinois on January 2, 2024.  This is an LLC originally organized in 2016, during the marriage.  Steven has not tendered any documents for this entity or disclosed his management fees.

[20] The ██% total interest Steven transferred to ███████████ respectively was marital property. Steven has provided no evidence, documentation, or records supporting what consideration he received in exchange for this transfer.

7470059_2.docx

accountant, **Steven still owns a ▉% interest in Atlas as of January 18, 2023**.  A true and correct copy of the email from Andrew Hahm to "Joshua" dated January 18, 2023, is attached hereto and incorporated herein by reference only as **Exhibit "U."**

102.    An application of the aforementioned holding in *Devick* that joinder is proper to preserve a marital asset (315 Ill. App. 3d at 914) supports the finding that Atlas is indeed a necessary third party to this matter because this Court will be unable to make a complete determination of the controversy without Atlas as a party.

103.    Steven's ▉% interest in Atlas is marital property and the ▉% interest he transferred may be as well. Therefore, Jeanette is entitled to an equitable distribution of her share of the marital property. Joining Atlas to the instant matter is necessary to protect Jeanette's interest in Atlas.

104.    Also, as set forth above, Atlas must be joined because any judgment entered in this matter will undoubtedly have an impact on the organization given that Steven is the ▉▉▉▉ **owner** of Atlas.

105.    Without joining Atlas to the instant matter, Jeanette's interest in the marital estate (including Atlas) will be left unprotected and able to be manipulated by the majority owner, Steven.  Steven has already shown that he will refuse to take salary for seven years, refuse to produce records and transfer his ownership interest to others to Jeanette's detriment.

106.    The parties' marital interest in Atlas must be protected Atlas must be made a party to do so.

107.    Steven's membership interest in Atlas will need to be valued in order for the Court to make an equitable disposition of Steven's marital interest. Therefore, if Atlas is not

7470059_2.docx

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87507C

joined, this Court will be unable to adequately oversee the valuation and ultimately allocate the marital estate.

108.    If Atlas is not joined, this Court will play right into Steven's hands and give him what he so desperately wants - to deprive Jeanette of her right to marital property. Therefore, not only is joinder proper, but it is necessary to ensure that justice is served.

109.    In sum, because Atlas is presumed marital property, Atlas must be joined as a necessary party to the instant action. *See Peshek*, 89 Ill. App. 3d at 965; 750 ILCS 5/403(d); 750 ILCS 5/503.

110.    Atlas is subject to this Court's jurisdiction because its principal place of business is located in Illinois. According to the Illinois Secretary of State, Atlas Apartment Homes LLC's principal business address is 55 E. Monroe Street, Suite 3610, Chicago, Illinois 60603. Accordingly, Atlas is subject to this Court's jurisdiction pursuant to 735 ILCS 5/2-209(a)(12).

WHEREFORE, the Petitioner, JEANETTE IVANKOVICH, respectfully prays that this Honorable Court grant her the following relief:

A.    For the entry of an Order granting JEANETTE IVANKOVICH leave to cause service of process on Atlas Apartment Homes LLC so as to join Atlas Apartment Homes LLC into these proceedings as a third-party; and

B.    For such other and further relief as this Court deems just and equitable.

### COUNT VII: MOTION FOR LEAVE TO JOIN OLD TOWN PROPERTY VENTURES LLC AS A NECESSARY THIRD PARTY

1-110.  Jeanette restates and realleges the allegations of Paragraphs 1-110 of the Prefatory Matter, Factual Background Common to All Counts, Legal Authority, and Counts I-VI as if fully set forth herein.

7470059_2.docx

FILED DATE: 2/9/2024 5:44 PM   2021D009220

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87507C

111.    On April 13, 2023, during Steven's adverse testimony in court, he denied purchasing the residence next door to the marital residence, 233 W. Menomonee (either directly or through an entity), which was on the market and sold on approximately December 19, 2022.[21] Transcript of Proceedings before the Hon. Patrick Powers dated April 13, 2023 at 106 (lines 5-19).

112.    The water bill for 233 W. Menomonee, which Steve denied owning, is addressed to Steven Ivankovich. See the water bill for 233 W. Menomonee which is attached hereto as **Exhibit "V."**

113.    The water account for the neighboring house is held in Steven's name.  Either Steven is paying a water bill on a house he does not own (in which case his Financial Affidavit is void of any information about this expense), or he lied to the court about being involved in the purchase of the home, which is more likely the case.  (And, in case the Court is wondering, a separate water bill for the parties' marital residence exists.  This is not a case of mistaken addresses.) Notably, the previous owner of the 233 W. Menomonee property had passed away and the house became available for sale, which upon information and belief, is when Steve purchased the property through an LLC.

114.    233 W. Menomonee is likely marital property, purchased by Steven, or one of the LLCs controlled by Steven and placed into another LLC's name.  As Steven likes to say, he can populate an entity "with the signing of a pen and a phone call in a matter of minutes" and has the ability "to move money as [he] see[s] fit to that entity or away from that entity.[22]" Upon

---

[21] In early June 2023, Jeanette retrieved the mail and opened what she reasonably believed was the water bill for the marital residence. The parties' marital residence, located at 235 W. Menomonee, is still Jeanette's permanent mailing address and she receives her mail and household bills there.   On closer inspection, she noted that the water bill for 233 W. Menomonee – the house next door - had been placed in the mailbox by mistake and that she had inadvertently opened the wrong bill.
[22] *Atlas v. Macquarie et al.*, Record of Proceedings dated January 13, 2020, Trial Transcript at 304:8-17.

FILED DATE: 2/9/2024 5:44 PM   2021D009220

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87527C

information and belief, during the pendency of these proceedings and without Jeanette's knowledge or consent, Steven placed 233 W. Menomonee in the name of Old Town Property Ventures and then lied to the Court about his lack of knowledge or involvement in the purchase.

115.   An application of the aforementioned holding in *Devick* that joinder is proper to preserve a marital asset (315 Ill. App. 3d at 914) and in *Peshek* (89 Ill. App. 3d at 965) that a third party holding alleged marital property should be joined in the dissolution action support the finding that Old Town Ventures is indeed a necessary third party to this matter. Old Town Property Ventures owns and has control over at least one marital asset, namely 233 W. Menomonee.

116.   If Old Town Property Ventures is not joined, this Court will play right into Steven's hands and give him what he so desperately wants:  to deprive Jeanette of her right to marital property. Therefore, not only is joinder proper, but it is necessary to ensure that justice is served.

117.   In sum, because Old Town Property Ventures holds marital property and the Court will be unable to distribute the marital property held by it, Old Town Property Ventures must be joined as a necessary party to the instant action. *See Peshek*, 89 Ill. App. 3d at 965; 750 ILCS 5/403(d); 750 ILCS 5/503.

118.   Old Town Property Ventures is subject to this Court's jurisdiction because it allegedly owns real estate within the State of Illinois. As set forth above, Old Town Property Ventures owns 233 W. Menomonee, therefore Old Town Property Ventures is subject to the Court's jurisdiction. *See* 735 ILCS 5/2-209(a)(3).

WHEREFORE, the Petitioner, JEANETTE IVANKOVICH, respectfully prays that this Honorable Court grant her the following relief:

7470059_2.docx

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87507C

FILED DATE: 2/9/2024 5:44 PM   2021D009220

     A.     For the entry of an Order granting JEANETTE IVANKOVICH leave to cause service of process on Old Town Property Ventures LLC so as to join Old Town Property Ventures LLC into these proceedings as a third-party; and

     B.     For such other and further relief as this Court deems just and equitable.

### COUNT VIII: MOTION FOR LEAVE TO JOIN NORTH AMERICAN CONDOMINIUM SOLUTIONS LLC AS A NECESSARY THIRD PARTY

1-118.  Jeanette restates and realleges the allegations of Paragraphs 1-118 of the Prefatory Matters, Factual Background Common to All Counts, Legal Authority, and Counts I-VII as if fully set forth herein.

119.    On or about November 23, 2022, Steven contracted to purchase Unit 55A at the Trump Tower located at 401 North Wabash in Chicago, Illinois ("Trump Condo"). Rather than hold title in his individual name, Steven, or an agent acting on his behalf, eventually placed the title to the Trump Condo in an LLC called North American Condominium Solutions LLC ("North American Condo Solutions").

120.    On May 17, 2023, Steven testified that he did not execute documents related to the purchase of the Trump Condo. Transcript of Proceedings before Hon. Patrick Powers dated May 17, 2023, at 104 (lines 1-11).

121.    Yet in the documents Jeanette received in response to her subpoena to Penny Bagherpour, the real estate agent who showed and toured the property with Steven, Steven signed (and initialed on each page) the Condominium Real Estate Purchase Contract for the Trump Condo. A true and correct copy of the Condominium Real Estate Purchase Contract for 401 N. Wabash Unit 55A is attached hereto as **Exhibit "W."**

122.    Not only did Steven sign (and initial) each page of the Condominium Real Estate Purchase Contract for the Trump Condo, but he toured the unit twice (once with his children)

and supplied the proof of funds for the purchase of same. The proof of funds for the purchase of the Trump Condo was an account snapshot of the Ivankovich Family LLC account x███ at Celadon which showed a cash balance of $13,233,655. Steven is 100% member of Ivankovich Family LLC. A true and correct copy of the Account Snapshot dated November 23, 2022 is attached hereto as **Exhibit "X."**

123.    Not only has Steven failed to produce discovery related to North American Condo Solutions, but he has affirmatively lied to the Court about his ownership and involvement in the purchase of the Trump Condo.

124.    The Trump Condo is marital property, and it is being held and allegedly controlled by North American Condo Solutions.

125.    An application of the aforementioned holding in *Devick* that joinder is proper to preserve a marital asset (315 Ill. App. 3d at 914) and in *Peshek* (89 Ill. App. 3d at 965) that a third party holding alleged marital property should be joined in the dissolution action support the finding that North American Condo Solutions is indeed a necessary third party to this matter given that North American Condo Solutions owns and has control over a marital asset.

126.    Steven knowingly and purposely transferred the purchase of the Trump Condo to an LLC to divest Jeanette of her marital property rights.  This is a fraudulent transfer.

127.    This Court will be unable to adequately value and determine the equitable disposition of Trump Condo and/or North American Condo Solutions. Therefore, if North American Condo Solutions is not joined, this Court will be unable to adequately allocate the marital estate.

128.    If North American Condo Solutions is not joined, this Court will play right into Steven's hands and give him what he so desperately wants:  to deprive Jeanette of her right to

7470059_2.docx

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87597C

marital property. Therefore, not only is joinder proper, but it is necessary to ensure that justice is served.

129.     In sum, because North American Condo Solutions holds marital property and the Court will be unable to distribute the marital property held by it, North American Condo Solutions must be joined as a necessary party to the instant action. *See Peshek*, 89 Ill. App. 3d at 965; 750 ILCS 5/403(d); 750 ILCS 5/503.

130.     North American Condo Solutions is subject to this Court's jurisdiction because it allegedly owns real estate within the State of Illinois. As set forth above, North American Condo Solutions allegedly purchased the Trump Condo, therefore North American Condo Solutions is subject to the Court's jurisdiction. *See* 735 ILCS 5/2-209(a)(3).

WHEREFORE, the Petitioner, JEANETTE IVANKOVICH, respectfully prays that this Honorable Court grant her the following relief:

A.     For the entry of an Order granting JEANETTE IVANKOVICH leave to cause service of process on North American Condominium Solutions LLC so as to join North American Condominium Solutions LLC into these proceedings as a third-party; and

B.     For such other and further relief as this Court deems just and equitable.

## COUNT IX: MOTION FOR LEAVE TO JOIN OVERLOOK MANAGING MEMBER LLC AS A NECESSARY THIRD PARTY

1-130.  Jeanette restates and realleges the allegations of Paragraphs 1-130 of the Prefatory Matters, Factual Background Common to All Counts, Legal Authority, and Counts I-VIII as if fully set forth herein.

131.     According to the Limited Liability Company Agreement of Overlook Managing Member LLC ("Overlook LLC Agreement"), Overlook Managing Member LLC ("Overlook") was formed on March 29, 2017.

7470059_2.docx

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2F87597C

FILED DATE: 2/9/2024 5:44 PM   2021D009220

132.     The Overlook LLC Agreement further states that Steven Ivankovich is a 93% member of Overlook[23]. As of January 19, 2024, Steven still maintains "*at least* a 90% interest in Overlook Managing Member LLC. *See* ¶8 of **Exhibit "CC."**

133.     Steven acquired his interest in Overlook during the parties' marriage. As such, Steven's interests therein are presumed to be marital property, and Jeanette has a marital interest in same.

134.     Overlook serves as the manager, member, and or managing member of numerous LLCs, including but not limited to, PILGRIM Caribbean Isle LLC and PILGRIM Forest Park LLC (collectively referred to herein as "Pilgrim LLCs").

135.     The Pilgrim LLCs are the sole members of Alliance HTFL, LLC.

136.     On or about April 1, 2022, two pieces of real property held by or for the benefit of the Pilgrim LLCs were sold. Upon information and belief, the total realized by the Pilgrim LLCs upon the sale of said closings were approximately $35,000,000.

137.     On or about April 6, 2022, Steven wire transferred approximately $30,000,000 of the $35,000,000 to A&O Family LLC (Florida)[24].

138.     An application of the aforementioned holding in *Devick* that joiner is proper to preserve a marital asset (315 Ill. App. 3d at 914) supports the finding that Overlook is indeed a necessary third party to this matter.  The Court will need to characterize and distribute Steven's interest in Overlook as a marital asset.

---

[23] Steven lists a 93% interest in Overlook on his financial affidavit served on March 10, 2023.
[24] *See* Verified Complaint filed on November 21, 2023 by P-5 GRA, LLC (*P-5 GRA, LLC* v. *Steven Ivankovich and Overlook Managing Member LLC, Alliance HTFL GP, LLC, Pilgrim Caribbean Isle, LLC, and Pilgrim Forest Park LLC,* DE Case # 2023-1182).

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87527C

139.    As set forth above, **Steven has allegedly already diverted over $30,000,000 million dollars from Overlook during these proceedings** and refuses to cooperate with supplying information or permitting Jeanette access to her marital property interest.

140.    **Steven's 93% interest in Overlook is marital property**. Therefore, Jeanette is entitled to an equitable distribution of same. Joining Overlook to the instant matter is necessary to protect Jeanette's interest in Overlook.

141.    Without joining Overlook to the instant matter, Jeanette's interest in the marital estate will be left unprotected and subject to manipulation by Steven, the managing member and 93% owner.

142.    If Overlook is not joined, this Court will play right into Steven's hands and give him what he so desperately wants - to deprive Jeanette of her right to marital property. Therefore, not only is joinder proper, but it is necessary to ensure that justice is served.

143.    Furthermore, because the Court will be required to value and distribute Steven's marital ownership interest in Overlook, any judgment entered in this matter will potentially have an impact on the organization and the other members.

144.    In sum, because (1) Steven's interest in Overlook is marital property; (2) the Court will be unable to preserve the marital estate; and (3) the Court will be unable to distribute Steven's interest in Overlook unless Overlook is joined as a necessary party to the instant action. *See Peshek*, 89 Ill. App. 3d at 965; 750 ILCS 5/403(d); 750 ILCS 5/503.

145.    Overlook Managing Member, LLC is subject to this Court's jurisdiction because its principal place of business is located in Illinois. According to the Florida Secretary of State, Overlook Managing Member LLC's principal business address is 55 East Monroe Street, Suite

7470059_2.docx

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87597C

3610, Chicago, Illinois 60603. Accordingly, Overlook Managing Member LLC is subject to this Court's jurisdiction pursuant to 735 ILCS 5/2-209(a)(12).

WHEREFORE, the Petitioner, JEANETTE IVANKOVICH, respectfully prays that this Honorable Court grant her the following relief:

A.    For the entry of an Order granting JEANETTE IVANKOVICH leave to cause service of process on Overlook Managing Member LLC so as to join Overlook Managing Member LLC into these proceedings as a third-party; and

B.    For such other and further relief as this Court deems just and equitable.

## COUNT X: MOTION FOR LEAVE TO JOIN ANTHONY IVANKOVICH AS A NECESSARY THIRD PARTY

1-145.   Jeanette restates and realleges the allegations of Paragraphs 1-145 of the Prefatory Matters, Factual Background Common to All Counts, Legal Authority, and Counts I-IX as if fully set forth herein.

146.   Dr. Anthony Ivankovich ("Anthony"), Steven's father, must be joined as a necessary third party is this matter because he is currently, according to Steven, holding marital interests, and he is facilitating fraud upon the marital estate.

A.    <u>Anthony must be joined as a necessary third-party because he is holding marital interests which were improperly and fraudulent transferred out of the marital estate.</u>

147.   Anthony is holding marital assets which were improperly and fraudulently transferred out of the marital estate. Specifically, Anthony, according to Steven, allegedly holds Steven's marital interest in Ivankovich Family LLC, P2, A&O Illinois, and A&O Florida.

148.   As set forth above, on November 3, 2023, P2, Ivankovich Family, Atlas Apartment Homes, and A&O Family filed a Complaint for Equitable and Legal Relief ("Ivankovich Family LLCs Complaint") in Illinois against Jeanette and Schiller DuCanto & Fleck.

7470059_2.docx

FILED DATE: 2/9/2024 5:44 PM   2021D009220

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E8F707C

149.    The Ivankovich Family LLCs Complaint states, in pertinent part,

i.      "Plaintiff Ivankovich Family LLC is a Delaware organized LLC. When originally formed it had five members, Steven Ivankovich, Dr. Olga Ivankovich, Dr. Anthony Ivankovich, all of whom are Florida residents, and minors Honoria and Isidore Ivankovich. **Shortly after receiving a membership interest in Ivankovich Family, Steven contributed his membership interest to Consilient Holdings Investments LLC**." (Complaint for Equitable and Legal Relief ¶ 2) (Emphasis Added).

ii.     "Plaintiff P2 is organized under the laws of Delaware, and is owned by other LLCs, all of which are organized under the laws of Delaware. Dr. Anthony Ivankovich, a Florida resident, owns 100% of an entity known as Consilient Holdings Investment LLC, which in turn now owns an 100% membership interest in P2. **Steven Ivankovich**, also a Florida resident, at one time owned a minority (20%) membership interest in P2, but **shortly after receiving the minority membership interest in P2, Steven contributed that membership interest to Consilient Holdings Investments LLC**…" (Complaint for Equitable and Legal Relief ¶ 4) (Emphasis Added).

150.    Upon information and belief, if the allegations of the complaint are correct[25], any interest in Ivankovich Family and P2 which were transferred to Anthony was done with the explicit intent to defraud Jeanette (and Steven's creditors). The factors as set forth in Section 5(b) of the Uniform Fraudulent Transfer Act overwhelmingly support the proposition that Steven had actual intent to defraud Jeanette, namely: (1) Steven's interest went to Anthony, his father, who is an insider for purposes of the Act; (2) the evidence shows that Steven maintains control over Ivankovich Family and P2 as both a member and the managing member; and (3) the alleged transfer was concealed from Jeanette.

---

[25] Jeanette disputes the veracity of the statements in the complaint. See her Motion for Sanctions re LLCs filed simultaneously herewith.

7470059_2.docx

FILED DATE: 2/9/2024 5:44 PM    2021D009200

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2F87527C

FILED DATE: 2/9/2024 5:44 PM   2021D009220

151.    On May 17, 2023, Steven testified that Anthony allegedly directed Steven to transfer his interest in A&O Family LLC to Anthony as part of his estate planning. Transcript of Proceedings before Hon. Patrick Powers dated May 17, 2023 at 217 (lines 3-8).

152.    Steven's ownership in A&O Family LLC is presumed to be a marital asset which was allegedly transferred to Anthony without adequate compensation to the marital estate. In other words, Steven transferred Jeanette's marital property to Anthony without any notice to her and certainly without any agreement or consideration.

153.    Upon information and belief, any interest in A&O which was transferred to Anthony was done with the explicit intent to defraud Jeanette (and Steven's creditors). The factors as set forth in Section 5(b) of the Uniform Fraudulent Transfer Act overwhelmingly support the proposition that Steven had actual intent to defraud Jeanette, namely: (1) Steven's interest went to Anthony, his father, who is an insider for purposes of the Act; (2) the evidence shows that Steven maintains control over A&O Family LLC as both a member and the managing member; and (3) the alleged transfer was concealed from Jeanette.

154.    On March 10, 2023, Steven served his financial affidavit in this matter. Steven's financial affidavit is void of any information which would even suggest that he transferred his interests in the LLCs - which holds millions of dollars of assets at Celadon alone - out of the marital estate. Furthermore, he has failed to produce any documents which would substantiate his claim of this alleged transfer despite Jeanette's outstanding request for same.

155.    Nevertheless, in the event the membership interests were transferred, and those transfers are substantiated by Steven, the LLCs or Anthony, Anthony then holds and controls a marital interest in *at least* two business entities that were transferred out of the marital estate under circumstances that involve both actual fraud and fraud against the marital estate.

41

DocuSign Envelope ID: 0D95539C-9D4E-486C-AEC1-CABA2E87507C

FILED DATE: 2/9/2024 5:44 PM 2021D009220

156. Unless this Court joins Anthony, the Court will be unable to protect Jeanette's interest in the Family Partnerships or make a complete determination, as the full marital estate is unknown at this time.

B. <u>Anthony must be joined because he is perpetrating fraud upon the marital estate</u>.

157. Not only must Anthony be joined due to his alleged control of marital interests, but Anthony must also be joined because Steven is utilizing Anthony to, in essence, launder marital money. Steven, Anthony, and Olga have concocted a fraudulent scheme where Steven purports that Anthony is the gatekeeper to funds which are actually owned by Steven. The visual depiction of same is shown below:



158. The funds in Anthony's possession, for which Steve allegedly needs permission to access, are Steven's and Jeanette's marital assets. Upon information and belief, between 2020

7470059_2.docx

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2F87507C

and 2021, Steven transferred his asset(s) to LLCs to avoid and defraud his creditors[26]. *See* Plaintiff's Motion to Compel and Extend the Hold on the Walker & Dunlop Funds dated April 24, 2023 at 1-2. A true and correct copy of Plaintiff's Motion to Compel and Extend the Hold on the Walker & Dunlop Funds dated April 24, 2023 is attached hereto and incorporated herein as **Exhibit "Y."**

159.   By way of example, but not limitation, Anthony (and Olga) holds at least $30,000,000 in marital funds.

160.   On or about April 6, 2022, according to the complaint, Steven transferred approximately $30,000,000 from Overlook to A&O Florida, which according to Steven is owned by his parents. The $30,000,000 is marital money because it was acquired due to Steven's majority interest in Overlook which is marital. So, Steven has transferred $30,000,000 from the marital estate to Anthony (and Olga).

161.   Now, he alleges that in order to receive or transfer funds from said LLCs, he must ask Anthony for permission. However, as became readily apparent during the preliminary injunction hearing conducted in November 2023 wherein Anthony was called to testify as a witness by Jeanette, █████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████

162.   Steven and his lawyers continuously posture that Steven has no access to money, no control of money and simply relies upon his parents' good graces for money.  Nothing could

---

[26] On or about August 26, 2020, Steven tendered a sworn personal financial statement to Zhu Zhai Holdings Limited and Peter Pui Tak Lee ("Zhu Zhai") which established that Steven had a total net worth in excess of $55,000,000 at the time said personal financial statement was executed. On August 17, 2021, a judgment of approximately $4,500,000 was entered against Steven in favor of Zhu Zhai. Now, Steven allegedly has no assets in his name. Further, Steven testified in the Zhu Zhai matter that he transferred his **own personal assets into entities in which he had an interest in.** In short, before the judgment was entered, he had over $55 million dollars and after the judgment was entered, he has $0. This Court cannot and should not be hoodwinked into thinking these two events are unrelated.

FILED DATE: 2/9/2024 5:44 PM   2021D009200

FILED DATE: 2/9/2024 5:44 PM   2021D009220

be further from the truth. Steven has testified that he asks his father for funds for transactions all the time and that his father has never turned him down.

163.     On or about January 13, 2020, Steven testified that Anthony has "never" turned down a request of Steven for funds. A true and correct copy of Motion for Turnover of Funds Held by Debtor Ivankovich, P2 Portfolio Managing Management LLC, Ivankovich Family LLC, or, Alternatively, an Order Prohibiting Transfer of Funds filed on June 16, 2022 is attached hereto as **Exhibit "Z."**

164.     Upon information and belief, Anthony does not turn down Steven's request for funds because the funds in question are actually Steven's funds. Furthermore, Anthony ███████ ███████████████████████████████████████████. Therefore, in reality, Steven has unfettered access to his own funds which have allegedly been given to his father to shield Steven from his obligation to repay creditors and to give Steven an excuse to starve Jeanette and the minor children from receiving their support and basic necessities.

165.     An application of the aforementioned holding in *Devick* that joinder is proper to preserve a marital asset (315 Ill. App. 3d at 914) and in *Peshek* (89 Ill. App. 3d at 965) that a third party holding alleged marital property should be joined in the dissolution action support the finding that Anthony is indeed a necessary third party to this matter given that Anthony is facilitating and perpetrating fraud against the marital estate and assisting Steven with the laundering of marital money.

166.     Without joining Anthony as a third party in this matter, this Court will be unable to preserve the marital estate as required under 750 ILCS 5/102(10). Thus, this Court has the authority the join Anthony not only pursuant to Sections 2-405 and 2-406 of the Illinois Code of

Civil Procedure, but also Section 403(d) of the Illinois Marriage and Dissolution of Marriage Act.

167.    In sum, Anthony is helping Steven facilitate his shell game by transferring Steven's money back and forth to him through the LLCs, including A&O. This constitutes fraud against the marital estate and Anthony must be joined as a necessary third party to protect Jeanette's interest in the marital estate and marital monies.

C.      Either Anthony is ███████████████████████████ or Anthony is ████████ and Steven's prior assertions that he must obtain his father's consent to access monies and complete financial transactions are a complete farse.

168.    Notwithstanding Anthony's attorneys attempt to portray Anthony as ████████ ███████████████████████████████████████████████████████████████,

Anthony has allegedly done the following:

i.      In November of 2022, Anthony directed Steven to transfer to Anthony his .125% interest in A&O. According to Steven's testimony, he signed "an agreement in [November of 2022]" which transferred his interest. Steven has refused to produce said agreement.

ii.     On October 2, 2023, Anthony transferred $6,000,000 from A&O Celadon Account #2 at Celadon Financial Group. Paul Waldman stated he spoke to Anthony on the telephone to verify this transaction.

iii.    On October 17, 2023, Anthony signed a 13 paragraph, 4-page affidavit, under oath, in support of his Motion for Summary Judgment in the foreclosure action swearing he could testify as to numerous detailed financial transactions.  A true and correct copy of Dr. Anthony Ivankovich's Affidavit in Support of his Motion for Summary Judgment is attached hereto as **Exhibit "AA."**

169.    Either Anthony is ████████████████████████ or Anthony is ████████████ and Steven's prior assertions that he must obtain his father's consent to access monies and complete financial transactions are a complete farse.  But for so long as Steve maintains his cries of poverty and that the funds Jeanette has unveiled are controlled by his parents, they must be joined in these proceedings. See *In re Marriage of Peshek*.

170.    Anthony has also submitted himself to this Court's jurisdiction. Anthony has the requisite minimum contacts for Illinois to assert personal jurisdiction over him. Specifically, Olga has testified that she has resided with Anthony at their residence in Wilmette, Illinois for 18 years. Transcript of Proceedings before Judge Powers dated October 13, 2023 at 87 (lines 2-10).

171.    Additionally, Anthony has freely and voluntarily submitted himself to the jurisdiction of Illinois courts when he filed counterclaims in the Chancery Division of the Circuit Court of Cook County, Illinois (Case Number 2019 CH 14866).

WHEREFORE, the Petitioner, JEANETTE IVANKOVICH, respectfully prays that this Honorable Court grant her the following relief:

A.      For the entry of an Order granting JEANETTE IVANKOVICH leave to cause service of process on ANTHONY IVANKOVICH so as to join ANTHONY IVANKOVICH into these proceedings as a third-party; and

B.      For such other and further relief as this Court deems just and equitable.

## COUNT XI: MOTION FOR LEAVE TO JOIN OLGA IVANKOVICH AS A NECESSARY THIRD PARTY

1-171.  Jeanette restates and realleges the allegations of Paragraphs 1-171 of the Prefatory Matters, Factual Background Common to All Counts, Legal Authority, and Counts I-X as if fully set forth herein.

DocuSign Envelope ID: 0D95539C-9D4E-486C-AEC1-CABA2E87597C

FILED DATE: 2/9/2024 5:44 PM   2021D009220

7470059_2.docx

172.    Olga Ivankovich is a necessary third party to this matter because she, like Anthony, is perpetrating fraud against the marital estate, assisting Steven with the laundering of marital monies, and supporting Steven's agenda to literally starve out Jeanette and the minor children.

173.    Olga, like Anthony, is holding marital funds which were improperly and fraudulently transferred out of the marital estate. As set forth more fully above, Olga is a part of the fraudulent scheme where Steven purports that Anthony is the gatekeeper to funds which are actually owned by Steven. Olga is a willing participant in the perpetuation of fraud against Jeanette and the children in the instant matter.

174.    On or about April 6, 2022, according to the complaint filed against Steven, Steven transferred approximately $30,000,000 from Overlook to A&O Florida, which according to Steven, is owned by his parents. The $30,000,000 is marital money because it was acquired solely due to Steven's majority interest in Overlook. Thus, Steven has transferred $30,000,000 from the marital estate to Olga (and Anthony).

175.    On November 3, 2023, Olga Ivankovich testified in this matter that she gives Steven money whenever he wants and that she has never turned him down. *See* ROP 11/3/23 p. 36 at line 13. So, not only does Steven have unfettered access to funds from his father, Anthony, but also from his mother, Olga.

176.    Olga is a necessary party to this action because she allegedly holds marital monies that were transferred out of the marital estate under circumstances that involve both actual fraud and fraud against the marital estate.

177.    In September 2023, Olga brazenly admitted to Jeanette that "I have been telling you all along that the final decision for settlement will come from Dr. Ivankovich and me."  She

DocuSign Envelope ID: 0D9553B6-9D4E-486C-A6C1-CABA2E87527C

FILED DATE: 2/9/2024 5:44 PM   2021D009220

further continued threatening Jeanette, "Don't look to Steven or the Court to help you because it is our money."   A true and correct copy of Olga's September 5, 2023 email to Jeanette is attached hereto and incorporated herein as **Exhibit "BB."**

178.    On November 17, 2022, Steven testified that Olga "is helping fund the bills, so she speaks with [Steven's Florida counsel] a lot, and would, at least in the past, try to ascertain if she's going to continue to fund *both* jurisdictions."   Transcript of Proceedings before Hon. Ellen Flannigan dated November 17, 2022 at 175 (lines 21-24); *Id*. at 176 (lines 12-16).

179.    Unless this Court joins Olga, the Court will be unable to protect Jeanette's interest or make a complete determination, as the full marital estate is unknown at this time.

180.    Moreover, without joining Olga in this matter, the Court will be unable to "level the playing field" in relation to attorney's fees as required under the Illinois Marriage and Dissolution of Marriage Act. This Court must not allow Olga to fund Steven's litigation while Jeanette is left destitute. In fact, the marital estate will not be able to be equitably allocated if Jeanette cannot participate in this litigation.

181.    If Olga is not made a party to the instant suit, then she will be allowed to fund Steven's vexatious litigation in this matter while Jeanette will be left without funds to defend against same. This is completely against the intent of the legislature and Section 508 of the Illinois Marriage and Dissolution of Marriage Act.

182.    By allowing Olga to fund Steven's vexatious litigation, she is assisting Steven with literally starving out Jeanette and the parties' minor children.

183.    Without joining Olga as a third party in this matter, this Court will be unable to preserve the marital estate as required under 750 ILCS 5/102(10). Thus, this Court has the authority the join Olga not only pursuant to Sections 2-405 and 2-406 of the Illinois Code of

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87597C

Civil Procedure, but also Section 403(d) of the Illinois Marriage and Dissolution of Marriage Act.

184.    But for so long as Steven maintains his cries of poverty and that the funds Jeanette has unveiled are controlled by his parents, they must be joined in these proceedings. See *In re Marriage of Peshek*.

185.    Olga has also submitted herself to this Court's jurisdiction. She has testified in this matter and was served with the trial subpoena in Wilmette, Illinois. Further, Olga has the requisite minimum contacts for Illinois to assert personal jurisdiction over her. Specifically, Olga has testified that she has resided at her residence in Wilmette, Illinois for 18 years. Transcript of Proceedings before Judge Powers dated October 13, 2023 at 87 (lines 2-3).

WHEREFORE, the Petitioner, JEANETTE IVANKOVICH, respectfully prays that this Honorable Court grant her the following relief:

A.    For the entry of an Order granting JEANETTE IVANKOVICH leave to cause service of process on OLGA IVANKOVICH so as to join OLGA IVANKOVICH into these proceedings as a third-party; and

B.    For such other and further relief as this Court deems just and equitable.

SCHILLER DU CANTO & FLECK LLP
Attorneys for Jeanette Ivankovich

/s/ *Tanya J. Stanish*
BY: TANYA J. STANISH

SCHILLER DU CANTO & FLECK LLP
Attorney No. 26828
Attorneys for Jeanette Ivankovich
321 North Clark Street, Suite 1200
Chicago, Illinois 60654-4714
Telephone No. (312) 641-5560
Facsimile No. (312) 641-6361
Service by Facsimile Transmission Will Be Accepted
Service Preferred at: chicagoservice@sdflaw.com

DocuSign Envelope ID: 0D9553BC-9D4E-486C-AEC1-CABA2E87507C

STATE OF ILLINOIS          )
                           )
COUNTY OF COOK             )

     Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief and as to such matters I certify that I verily believe the same to be true.

DATED: _2/9/2024_____

DocuSigned by:

_Jeanette Ivankovich_____
—4E9A5...
JEANETTE IVANKOVICH

7470059_2.docx