UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 23-24894-CIV-MORENO

STEVEN IVANKOVICH,

      Plaintiff,

v.

JEANETTE IVANKOVICH and
SCHILLER DUCANTO & FLECK LLP

      Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### A. Background

This Cause came before the Court upon **(D.E. 9)** Defendants' Motion to Dismiss, filed on **January 5, 2024** and **(D.E. 12)** Plaintiff's Corrected Motion to Remand, filed on **January 22, 2024**.

Plaintiff Steven Ivankovich ("Steven") and Defendant Jeanette Ivankovich ("Jeanette") are are Respondent and Petitioner in a Dissolution of Marriage proceeding pending in the Circuit Court of Cook County, Illinois. [D.E. 1-1] ¶ 10. In that case, Jeanette was (and still is) represented by co-Defendant Schiller. *Id.* at ¶ 11. As the charging order judgment debtor, Steven was required to pay $400,000 for attorneys' fees and $25,000 for expert fees for Jeanette (totaling $425,000). *Id.* at ¶ 12. The Circuit Court of Cook County also found Steven in indirect civil contempt and issued a Body Attachment Order for an Unsecured Debt, which set a cash bond that Steven, once arrested, was required to post in the amount of $425,000. *Id.* The order does not allow Steven or a third party to post a bond to secure his release. *Id.* Schiller, as a creditor of Steven, is attempting to

require Steven, as manager of a group of LLCs, to use his LLCs' assets to pay the debt owed to Schiller. *Id.* at ¶ 13.

On November 13, 2023, Steven Ivankovich commenced a declaratory judgment action by filing a two-count complaint for declaratory relief against Defendants Jeanette Ivankovich and Schiller DuCanto & Fleck, LLP. [D.E. 1] ¶ 1. Count I requested a declaration by the Plaintiff of his obligations as a manager of multiple limited liability entities concerning access to LLC funds to pay Jeanette, as a judgment creditor, for legal fees that she owed to Defendant Schiller DuCanto & Fleck, LLP. *Id.* He seeks clarification on whether the charging order entered by the Circuit Court for Miami-Dade County prevents him from paying the fees out of his LLC accounts. *Id.*

Count II concerns declaratory relief regarding the treatment of Steven's membership interests, if any, that he owned in the LLCs as marital property—as well as a request for an injunction enjoining Florida law enforcement from enforcing the body attachment order on the ground that the order violates the Florida constitution. [D.E. 1-1] ¶ 49. If Steven is found to own LLC membership interests and if those membership interests are marital property, he wants to know what rights Jeanette would have to his LLC distributions or LLC participation. *Id.* at ¶ 37. Jeanette alleges that the LLCs' assets are marital property and that, as marital property, she owns at least 50 percent of whatever membership interests he owns in the LLCs. [D.E. 9]. Steven counters that any marital interest(s) Jeanette may have are subordinate to the rights of his creditors—and the rights of other members of the LLCs. [D.E. 22]. On July 29, 2022, the Circuit Court for Miami-Dade County, Florida, entered a charging order on Creditor Pami Grand Too, LLC's motion as judgment creditor of Steven, to a group of limited liability companies—specifically, P2 Portfolio Managing Member LLC, A&O Family LLC, and Consilient Holdings

LLC. [D.E. 1-1] ¶ 23. The charging order imposed a lien on any membership interest of Steven and directed the LLCS not to make any disbursement to Steven. *Id.*

In sum, Steven commenced this declaratory judgment and injunction action by filing (1) a Complaint for Declaratory Relief that Limited Liability Company Assets Are Not Assets of Steven Ivankovich; (2) a Declaration of Rights of Jeanette Ivankovich If Any of Marital Rights to Membership Interests in Limited Liability Entities; (3) a Declaration of Plaintiff's Obligation to Comply with the Charging Order Entered by this Court; and (4) a Preliminary and Permanent Injunction in the Circuit Court for Miami-Dade County, Florida. [D.E. 1-1].

Jeanette filed for divorce against Steven in the Circuit Court of Cook County, Illinois, on October 22, 2021. [D.E. 9]. Three weeks later, on November 12, 2021, Steven filed a divorce petition of his own in the Circuit Court for Miami-Dade County, Florida. [D.E. 20]. On January 24, 2024, the trial courts in both the Illinois and Florida divorce proceedings held a joint hearing pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act to determine which court had jurisdiction over the parties' minor children. *Id.* Both judges determined that Illinois had jurisdiction. *Id.* Accordingly, the parties are currently in the process of submitting an order in the Florida divorce proceeding dismissing that case and transferring any pending matters to the Illinois divorce proceeding. *Id.*

### B. Issue

There are two issues at the Motion to Dismiss stage, each of which relate to Plaintiff's two Counts in the Complaint, respectively. First, the Defendants argue that the Court should decline to exercise jurisdiction over Steven's claim because it involves a domestic relations issue that is already pending in—and will be resolved by—the Illinois divorce court. Plaintiff counters that this Motion to Dismiss is substantively a Motion to Transfer, and that it should be addressed

3

accordingly. Second, the Defendants posit that dismissal is appropriate on the ground that Steven's injunction request violates the Full Faith and Credit Clause of the U.S. Constitution. Plaintiff counters with a case from Florida's Third District Court of Appeals that is meant to show that Florida will not give Full Faith and Credit to a foreign judgment for the payment of monetary damages that enforces that judgment by incarceration of the judgment debtor.

### C. Legal Analysis

*Count I*

The Defendants' argument that the Court should dismiss Count I of the Complaint under Federal Rule of Civil Procedure 12(b)(1) is persuasive. Plaintiff ignores the argument by responding to it as if the Motion to Dismiss were a Motion to Transfer, engaging in a 28 U.S.C. § 1404(a) analysis. However, Defendants explicitly argued for dismissal—not transfer—of Count I of the Complaint on the basis of abstention doctrine from *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Although the Court could simply rule in favor the Defendants on Count I by virtue of the Plaintiff's failure to address Defendants' dismissal arguments, the Court finds it worthwhile to address the merits of Defendants' arguments.

*Colorado River* abstention doctrine, in which a District Court may decline to exercise its jurisdiction, applies "when federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). The parties in the divorce proceeding are Steven and Jeanette. The parties in the present case are Steven, Jeanette, and Schiller DuCanto & Fleck. Though not identical, they are substantially the same. The Eleventh Circuit has made clear that *Colorado River* abstention does not require that "the relevant federal and state cases share *identical* parties, issues, and requests for relief." *Id.; see O'Dell v. Doychak*, 2006 WL 4509634, at *6 (M.D. Fla. Oct. 19, 2006)

4

(clarifying that "[t]wo cases can involve substantially similar parties even if some defendants present in the federal case are not parties to the state action."). Defendants properly note that Schiller DuCanto & Fleck is intimately involved in the divorce cases as Jeanette's counsel and is the beneficiary of the order at issue in Count I of the Complaint in this case—the divorce court's order requiring Steven to pay Schiller DuCanto & Fleck legal fees. Thus, the parties are "substantially the same" for *Colorado River* purposes.

Further, the Defendants are correct that a threshold question that must be addressed before confronting any priority issues is whether Jeanette has a marital interest in Steven's LLC membership interests. Steven attempts to reframe the questions in his Complaint, but he directly asks, "[D]oes Jeanette have a marital interest in any Steven Ivankovich membership interests in the Plaintiffs?" and "Is any membership interest that Steven has or previously owned in the LLCs marital property?" [D.E. 25]. The Illinois divorce court "is responsible for determining what property is or is not 'marital property[,]'" per Illinois law. *In re Thorpe*, 546 B.R. 172, 177 (Bankr. C.D. Ill. 2016). Therefore, the issue from the divorce proceeding is the substantially the same as that in our case under *Colorado River*.

Upon establishing substantially similar parties and issues, the Court must engage in a six-factor analysis to analyze the permissibility of abstention. *Ambrosia*, 368 F.3d at 1331. Those factors are as follows:

> "(1) whether one of the courts has assumed jurisdiction over the property, (2) inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights."

*Id.* (citing *Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir. 1990)). Further, the "vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*." *Id.* (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n.20 (1983) (internal quotations omitted)).

First, the Illinois divorce court is the proper venue for determining whether Jeanette has a marital interest in Steven's membership interests in the LLCs. As *In re Thorpe* discusses, "[u]nder Illinois law, a divorce court is responsible for determining what property is or is not 'marital property' and, once that categorization is made, 'shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors.'" 546 B.R. at 177 (quoting 750 Ill. Comp. Stat. Ann. 5/503(d)). For *Colorado River* purposes, the Illinois state court has taken jurisdiction over the property in question—Steven's LLC membership interests and distribution payments resulting therefrom.

Second, the convenience of Florida as forum is not clear. Jeanette makes a strong case that Illinois is her domicile, and it is the domicile of Schiller DuCanto. Steven is domiciled in Florida, but this matter does not have much of a relationship with the State of Florida outside of that fact.

Third, if the case is to proceed here, piecemeal litigation is likely. The Illinois divorce court will certainly make its own ruling on the marital property question, even if this Court also does. Because this case is properly before a separate court, which has jurisdiction over all issues relating to Steven and Jeanette's marital dissolution, this Court need not make a ruling on such an issue.

Fourth, the Illinois divorce proceeding began on October 22, 2021. This proceeding began November 17, 2023. Thus, Illinois obtained jurisdiction before this Court by over two years.

Fifth, state law will determine the issues raised in Count I of Steven's Complaint, which raises questions of marital property and priority of distributions, neither of which implicates federal law.

Sixth, the Illinois court is adequately situated to protect the parties' rights. The Illinois court is perfectly situated to determine whether Steven's membership interests in the LLCs constitute marital property. Additionally, whether Jeanette or Pami Grand Too LLC has priority over Steven's LLC distributions if those distributions are deemed marital property is a question the divorce court can also address. *See, e.g., In re Marriage of Olbrecht*, 597 N.E.2d 635, 640 (Ill. App. Ct. 1992) ("Consideration must be given to addressing the claims of a third party to alleged marital property."). In other words, the Illinois divorce court is positioned to address a number of issues Steven may raise in the course of litigation that relate to protection of the parties' rights.

In addition to the six *Colorado River* factors, it is worth addressing "the importance of whether the concurrent cases involve a federal statute that evinces a policy favoring abstention." *Ambrosia*, 368 F.3d at 1331. Here, although no particular federal statute evinces a policy that favors abstention, the Supreme Court has suggested there is a "domestic relations exception" to jurisdiction, which "divests the federal courts power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 690, 703 (1992). As the Eleventh Circuit articulated, "federal courts will not review or modify a state court divorce order even when the plaintiff couches the claims in other terms." *McCavey v. Barnett*, 629 F. App'x 865, 867 (11th Cir. 2015). *See also Irish v. Irish*, 842 F.3d 736, 741 (1st Cir. 2016) ("the domestic relations exception covers attempts to determine or modify not only alimony awards but also the division of marital property pursuant to a divorce."). The domestic relations exception to jurisdiction "reflects an understanding that the federal forum is inappropriate and reinforces the policy's rationale: *state*

7

*courts* are experts at dividing marital property, entering the necessary decrees, and handling the sensitive conflicts that follow." *Irish*, 842 F.3d at 741. In conclusion, Count I of Steven's Complaint is dismissed.

*Count II*

The Defendants' Full Faith and Credit Clause argument supporting dismissal is similarly persuasive. "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV § 1. Further, "[a] state may not disregard the judgment of a sister State because it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits." *V.L. v. E.L.*, 577 U.S. 404, 407 (2016). "The Supreme Court . . . continues to reject any notion that a state may elevate its own public policy over the policy behind a sister state's judgment and thereby disregard the command of the Full Faith and Credit Clause." *Ledoux-Nottingham v. Downs*, 210 So. 3d 1217, 1223 (Fla. 2017). In *Ledoux-Nottingham*, the petitioner filed suit in Florida state court seeking to modify a judgment entered by a Colorado state court ordering grandparent visitation with the petitioner's minor children. The petitioner argued that the Colorado judgment explicitly violated article I, section 23 of the Florida Constitution. *Ledoux-Nottingham*, 210 So. 3d at 1218. There, the Florida Supreme Court affirmed the trial court's denial of the petition pursuant to the Full Faith and Credit Clause of the U.S. Constitution. As the Court explained, "the question presented . . . [was] not whether the Grandparents [were] entitled to visitation under Florida law, but whether Florida [was] required to enforce the Colorado order [although] entry of a similar judgment by a Florida court . . . would be prohibited by the Florida Constitution." *Id.* at 1223. The Court answered in the affirmative. *Id.*

Here, the same analysis applies. As Defendants properly argue, Steven's Complaint does not allege that the Illinois state court lacked jurisdiction over Steven to enter the body attachment

8

order in the underlying divorce proceeding. Rather, he asserts that it violates the Florida Constitution. That point, however, is irrelevant, since the order was entered in Illinois pursuant to Illinois law. Florida *must* enforce the body attachment order even if it violates Florida's Constitution or public policy because it was validly entered by an Illinois state court with jurisdiction over the parties. *See, e.g., Ledoux-Nottingham*, 210 So. 3d at 1223.

Plaintiff leans heavily on *Weiss v. Weiss*, 100 So. 3d 1220 (Fla. 2d DCA 2012). This case, however, predates the *Ledoux-Nottingham* Florida Supreme Court opinion and is not persuasive. Therefore, the Court dismisses Count II of Plaintiff's Complaint.

### D. Conclusion

In conclusion, the Court dismisses Count I of the Complaint because the six *Colorado River* abstention factors, as well as public policy, favor dismissal. Further, the Court dismisses Count II of the Complaint because the Florida Supreme Court has spoken clearly on the issue of Full Faith and Credit as it applies to enforcement of foreign court's judgments that violate the local state's constitution. Upon granting the Motion to Dismiss as to both Counts of the Complaint, the Court need not address the Plaintiff's Motion for Remand.

THE COURT has considered the motions, the responses, the replies, pertinent portions of the record, and being otherwise fully advised in the premises, it is **ADJUDGED** that the Motion to Dismiss is GRANTED as to both counts. Therefore, the Plaintiff's Motion for Remand is DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this ___1st___ of ~~June~~ July 2024.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record